**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 9 2002**

**PATRICK FISHER**
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

_____

EARNESTINE ROBINSON, as mother and next friend of a minor, Mytesha Robinson, Cherokee Robinson and LaJuan Robinson; REUBEN MONTOY, as father and next friend of a minor Eric Montoy and Ryan Montoy; KIMBERLY GWIN, as mother and next friend of a minor Sierra Gwin and Seth Gwin; EARL BESS, JR., as grandfather and next friend of a minor Rene Bess; KENNA BOYCE, as mother and next friend of a minor Keely Boyce; SANDRA DELGADO, as mother and next friend of a minor Cruiz Cedillo; LIEU DO, as mother and next friend of a minor Lynette Do; EVANGELINA GARCIA, as mother and next friend of a minor Ezekial Garcia and Emerald Garcia; PHYLLIS HARDING, as mother and next friend of a minor Christopher Harding and Monique Harding; MELODY HAWKINSON, as mother and next friend of a minor Joseph Hawkinson; ROBERT MAYNES, as father and next friend of a minor Lauri Maynes; PHILLIP NGUYEN, as father and next friend of a minor Jennie Nguyen; MARY LU TRIPPLITT, as mother and next friend of a minor Shasta Oaks; DA THU PHAM, as father and next friend of a minor Sandy Thu Pham, Nicole Thu Pham and Bruce Thu Pham; LINDA BETHKE, as mother and next friend of a minor Andrea Bethke,

     Plaintiffs-Appellees,

and

UNIFIED SCHOOL DISTRICT NO. 443, and
UNIFIED DISTRICT NO. 305,

Nos. 00-3315,
00-3332

Plaintiffs,

v.

STATE OF KANSAS; BILL GRAVES, in his official
capacity as the Governor of the State of Kansas;
LINDA HOLLOWAY, in her official capacity as the
chairperson of the State Board of Education; ANDY
TOMPKINS, in his official capacity as Commissioner
of the State Department of Education,

Defendants-Appellants.
_____

UNITED STATES OF AMERICA,

Intervenor-Appellee.

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 99-CV-1193-MLB)**

---

William Scott Hesse, Assistant Attorney General, Office of the Attorney General,
State of Kansas, Topeka, Kansas, for Defendants-Appellants.

Alan L. Rupe (Kelly J. Johnson with him on the brief) of Husch & Eppenberger,
LLC, Wichita, Kansas, for Plaintiffs-Appellees.

Seth M. Galanter, Attorney (Jessica Dunsay Silver, Attorney, with him on the
brief), Department of Justice, Washington, D.C., for Intervenor-Appellee.

---

Before **SEYMOUR** and **PORFILIO**, Circuit Judges, and **STAGG**,[*] District
Judge.

---

[*]Honorable Tom Stagg, United States District Judge, Western District of
Louisiana, sitting by designation.

-2-

**SEYMOUR**, Circuit Judge.

Earnestine Robinson, on behalf of her minor children, Cherokee, LaJuan, and Mytesha, filed suit along with other plaintiffs against the State of Kansas, its governor, and two state education officials challenging the state's school financing scheme. Defendants filed motions to dismiss. The district court denied the motions holding, *inter alia*, that defendants do not enjoy Eleventh Amendment immunity from suit. *Robinson v. Kansas*, 117 F.Supp.2d 1124 (D. Kan. 2000). Defendants filed an interlocutory appeal of the Eleventh Amendment immunity issue.[1] We affirm.

## I.

Plaintiffs contend the Kansas state school financing system, through a provision for "low enrollment weighting" and "local option budgets," results in less funding per pupil in schools where minority students, students who are not of

---

[1] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1292 and the collateral order doctrine, which permit appeal of interlocutory decisions in a limited set of exceptions to the final judgment rule. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1941)*; see also Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1199-1200 (10th Cir. 2002). The best established exception permits an interlocutory appeal of the denial of states' and state entities' claims to Eleventh Amendment immunity. *Timpanogos Tribe*, 286 F.3d at 1199-1200; *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 147 (1993).

United States origin, and students with disabilities are disproportionately enrolled. *See* School District Finance and Quality Performance Act, KAN. STAT. ANN. §§ 72-6405 through 72-6440 (1992) (SDFQPA). According to plaintiffs, SDFQPA and its enforcement have a discriminatory disparate impact on such students in violation of the implementing regulations of Title VI of the 1964 Civil Rights Act, 42 U.S.C. § 2000d-1, the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, and plaintiffs' rights to due process and equal protection under the Fourteenth Amendment. They seek an injunction barring enforcement of the Act.[2]

After the parties filed their briefs with this court, and well after plaintiffs filed their original complaint, the Supreme Court held there is no private right of action to enforce disparate impact claims under the Department of Education regulations issued pursuant to section 602 of Title VI, 42 U.S.C. § 2000d.[3] *See*

---

[2] Plaintiffs' original complaint specifically sought a court order requiring defendants to revise Kansas' school finance law to comply with federal law. In their brief opposing defendants' motion to dismiss, however, plaintiffs stated they are willing to amend their complaint to request injunctive relief prohibiting defendants from enforcing a state law found to violate federal law. The district court "strongly" urged plaintiffs to so amend their complaint on this point, *Robinson*, 117 F.Supp.2d at 1128 n.3, and plaintiffs reiterate on appeal their willingness to do so. *See* Aplee. Br. at 21.

[3] The Department of Education's regulation, 34 C.F.R. § 100.3(b)(2) (1999), relevant to this case reads:
> A recipient [of federal funds] may not, directly or through contractual or other arrangements, utilize criteria or methods of administration which have the effect of subjecting individuals to discrimination because of their race, color, or national origin, or have

(continued...)

*Alexander v. Sandoval*, 532 U.S. 275 (2001).[4] The Court's decision does not bar *all* claims to enforce to such regulations, but only disparate impact claims brought by private parties directly under Title VI. *Id.* at 299-300 (Stevens, J., dissenting). Disparate impact claims may still be brought against state officials for prospective injunctive relief through an action under 42 U.S.C. § 1983 to enforce section 602 regulations.[5] *Id.*

The decision in *Sandoval* does not affect plaintiffs' right to bring a disparate impact claim under section 504 of the Rehabilitation Act and defendants do not contend otherwise. *See New Mexico Ass'n for Retarded Citizens v. New Mexico*, 678 F.2d 847, 854 (10th Cir. 1982) (recognizing cause of action under section 504 based on claims of disparate impact); *see also Alexander v. Choate*, 469 U.S. 287, 299 (1985) (declining to decide whether disparate impact claims may be brought under section 504). While the language of the relevant sections

---

[3](...continued)
the effect of defeating or substantially impairing accomplishment of the objectives of the program as respect individuals of a particular race, color, or national origin.

[4] The Court reaffirmed its prior holdings that a private right of action exists under Title VI, section 601, in cases involving *intentional* discrimination. *See Alexander v. Sandoval*, 532 U.S. 275, 279-82 (2001).

[5] Plaintiffs have indicated their willingness to amend their complaint to bring their Title VI disparate impact claims against the named state officials under § 1983. We will thus assume for the purposes of this appeal that such amendment will occur upon remand.

of the Rehabilitation Act and Title VI are essentially identical, *compare* 29 U.S.C. § 794 *with* 42 U.S.C. 2000d, the Court's decision in *Choate* laid out the different aim of the Rehabilitation Act as well as the different context in which the Act was passed. *See Choate*, 469 U.S. at 296-97 ("[M]uch of the conduct that Congress sought to alter in passing the Rehabilitation Act would be difficult if not impossible to reach were the Act construed to proscribe only conduct fueled by a discriminatory intent."); *see also id.* at 294 n.11 (noting that by the time Congress enacted the Rehabilitation Act every cabinet department and about 40 federal agencies had adopted standards in which Title VI was interpreted to bar programs with a discriminatory impact). Therefore, our decision in *New Mexico Ass'n for Retarded Citizens* continues to controls.

Defendants contend the Eleventh Amendment of the United States Constitution bars plaintiffs' suit. Defendants maintain that Congress did not abrogate their Eleventh Amendment immunity, that they did not waive such immunity, and that the relief sought against state officials named as defendants does not fall under the *Ex Parte Young* doctrine.[6]

---

[6] Defendants further contend the suit is barred under the *Younger* abstention doctrine. *See Younger v. Harris*, 401 U.S. 37 (1971). Their contention arises out of a suit plaintiffs filed in state court after defendants filed their motion to dismiss in this case. The state suit challenges the Kansas school funding scheme on state law and constitutional grounds. Defendants do not point to any place in the record where they raised the issue in the district court and, based on

(continued...)

The Eleventh Amendment issue challenges our subject matter jurisdiction, and the district court considered the matter as a Rule 12(b)(1) motion to dismiss. We review the district court's decision de novo. *See ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1186 (10th Cir. 1998) (*citing SK Finance SA v. La Plata County, Bd. of County Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997)) (dismissal under Rule 12(b)(1) standard); *see also Powder River Basin Resource Council v. Babbitt*, 54 F.3d 1477, 1483 (10th Cir. 1995) (dismissal under Eleventh Amendment/*Ex Parte Young* doctrine).

## II.

The Supreme Court interprets the Eleventh Amendment as a bar to suits in federal courts against an unconsenting state brought by the state's own citizens.

---

[6](...continued)
our independent review of the record, it does not appear defendants ever did so. The district court did not rule on the matter.

Defendants maintain their failure to raise the issue below is due to the fact that plaintiffs commenced the state proceeding after defendants filed their motion to dismiss. This is no excuse. It is well established that we do not consider on appeal an issue not passed on below. *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 720 (10th Cir. 1993) (*citing Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). While this rule is "not without exceptions," *id.* at 721, such exceptions arise "only in the most unusual circumstances." *Id.* Defendants have offered no support for a finding that such circumstances exist here. It is not even clear that we would have jurisdiction to consider a *Younger* claim such as that presented in this case on interlocutory appeal. *See Timpanogos Tribe v. Conway*, 286 F.3d 1195 (10th Cir. 2002); *see also Armijo By and Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1264 (10th Cir. 1998). In short, we decline to reach the *Younger* issue on the merits.

*See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). As with all constitutional rights, the rule of state sovereign immunity is not absolute. Congress may abrogate such immunity in the exercise of its power to enforce the Fourteenth Amendment. *See Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976); *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Moreover, a state may waive its sovereign immunity. *See Innes v. Kan. State Univ. (In re Innes)*, 184 F.3d 1275, 1278 (10th Cir. 1999); *see also Lapides v. Bd. of Regents*, 122 S.Ct. 1640, 1643-44 (2002); *College Sav. Bank*, 537 U.S. at 670; *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985). In addition, when a private party sues a state officer for prospective injunctive or declaratory relief from an ongoing violation of the Constitution or federal laws, the suit is not considered to be against the state itself and the Eleventh Amendment does not apply. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *see also Timpanogos Tribe*, 286 F.3d at 1205.

Defendants contend Congress did not validly abrogate state sovereign immunity so as to allow plaintiffs to sue them in federal court. They further maintain Kansas has not waived its sovereign immunity from suit in federal court. Finally, they contend *Ex Parte Young* is inapplicable in this case. Because we hold that Kansas *has* waived its sovereign immunity with respect to the claims

against it for violation of the Rehabilitation Act,[7] we need not reach the abrogation claim. We also hold that the *Ex parte Young* doctrine is applicable to permit suit against the state officials pursuant to section 1983 for the alleged violations of Title VI and the Fourteenth Amendment.

A.

As the Supreme Court has bluntly stated, it is an "unremarkable. . . proposition that the States may waive their sovereign immunity. . . ." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 65 (1996). Such waiver may occur through a variety of statements or actions. Waiver may be voluntary, such as when a state invokes federal court jurisdiction. *See Lapides*, 122 S.Ct. at 1643-44; *College Sav. Bank*, 527 U.S. at 675. Waiver can also occur when the state "unequivocally" expresses its intent to submit itself to our jurisdiction. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). While an unequivocal expression of waiver may be effected by language in a state statute or constitutional provision, waiver may also result from a state's actions, specifically, its participation in a particular federal program. *See Innes*, 184 F.3d at 1278 (*quoting Atascadero*, 473 U.S. at 238 n.1); *see also id.* at 1280 ("[W]aiver

---

[7] Parties briefed the waiver and abrogation claims as they relate to plaintiffs' Title VI claim. As discussed above, plaintiffs' disparate impact claim may no longer be brought directly under Title VI but only via section 1983. Thus, this section of our decision relates only to plaintiffs' claim under the Rehabilitation Act.

may be found not only in the text of a state statute or constitution but also by examining the underlying facts and circumstances of the case."). Any waiver requires "an unequivocal indication that the State intends to consent to federal jurisdiction that would otherwise be barred by the Eleventh Amendment." *Atascadero*, 473 U.S. at 238 n.1. Such is the case now before us.

The Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, was enacted to combat disadvantage suffered by and imposed upon people with mental and physical disabilities. *See* 29 U.S.C. § 794. While Congress may have intended the tenets of this statute to apply to states and state entities, the Supreme Court was not convinced. In *Atascadero*, the Court held the Rehabilitation Act "falls far short of manifesting a clear intent to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity." *Atascadero,* 473 U.S. at 246. Declaration of this clear statement rule led Congress, in 1986, to amend, *inter alia*, the Rehabilitation Act and Title VI, to include such a clear statement.

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of section 504 of the Rehabilitation Act [29 U.S.C. 794], title IX of the Education Amendments of 1972 [20 U.S.C. 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C. 6101 et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. § 2000d-7(a)(1).

In *Lane v. Pena*, 518 U.S. 187, 197-200 (1996), the Supreme Court declared section 2000d-7 to constitute "the sort of unequivocal waiver that our precedents demand."[8] We therefore hold that by accepting federal financial assistance as specified in 42 U.S.C. § 2000d-7, states and state entities waive sovereign immunity from suit. In doing so, we join our sister circuits who have uniformly so held as well. *See Jim C. v. United States*, 235 F.3d 1079, 1081-82 (8th Cir. 2000) (en banc); *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 875-876 (5th Cir. 2000); *Stanley v. Litscher*, 213 F.3d 340, 344-45 (7th Cir. 2000); *Sandoval v. Hagan*, 197 F.3d 484, 493-94 (11th Cir. 1999), *rev'd on other grounds*, *Alexander v. Sandoval*, 532 U.S. 275 (2001); *Litman v. George Mason Univ.*, 186 F.3d 544, 553-54 (4th Cir. 1999); *Clark v. California*, 123 F.3d 1267, 1271 (9th Cir. 1997).

Defendants also rely heavily upon our decision in *In re Innes*. *Innes* involved a question of waiver of sovereign immunity in the context of a contract between Kansas State University (KSU) and the United States Department of Education. The contract required KSU to perform certain actions, including

---

[8] Defendants contend the language in *Lane* is inapplicable here because *Lane* involved waiver of *federal* sovereign immunity. Aplt. Br. at 36. Aside from the fact that their brief on this point confuses abrogation and waiver, their contention is misplaced. While the specific facts of *Lane* may differ from those before us, the Court in that case described section 2000d-7as "an unambigous waiver of the States' Eleventh Amendment immunity." *Lane*, 518 U.S. at 200.

submitting to federal court jurisdiction. No federal statute was involved, so the court was forced to inquire into the context surrounding the formation of the contract and the state statutes authorizing the making of such contracts by the state board of regents. Here, we have a federal statute under which a state unequivocally waives its immunity when it chooses to accept federal financial assistance. Defendants do not contend they did not voluntarily accept these funds, s*ee Litman*, 186 F.3d at 553, nor do they contend Congress has exercised its spending clause powers in an unconstitutional manner, *see id.* at 552-553 (*citing South Dakota v. Dole*, 483 U.S. 203 (1987)); *see also College Sav. Bank*, 527 U.S. at 686 (same). Thus, we fail to see how *Innes* is applicable.[9]

### III.

Plaintiffs also bring claims against Kansas' governor, the chairperson of the Kansas Board of Education, and the commissioner of the Kansas Board of Education in their official capacities seeking relief in the form of an injunction barring them from enforcing state laws found to be violative of federal law. We

---

[9] Defendants further argue they should not be held responsible for any of the actions alleged in plaintiffs' complaint because the Kansas Board of Education is "simply a conduit for federal funds which flow to local school boards. . . ." Aplt. Br. at 39. This fact is irrelevant when it is the Kansas Board of Education that applies for and administers federal funding and thus assures that it, as well as end-recipients of the funding, will abide by laws and rules attached to such financial assistance. *See* Aplee. Supp. App. at 28-29 (Form signed by Kansas Board of Education Commissioner assuring, *inter alia*, compliance with "all Federal statutes relating to nondiscrimination.").

deal here with plaintiffs' Fourteenth Amendment claims.  Our analysis will apply

equally to plaintiffs' Title VI claims if plaintiffs amend their complaint on

remand to allege a violation of Title VI under section 1983.[10]

As discussed above, the *Ex Parte Young* doctrine permits suits seeking

prospective injunctive relief against state officials acting in their official

capacities.  *See Ex Parte Young*, 209 U.S. at 159-160 (1908); *see also Will v.*

*Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989); *Elephant Butte*

*Irrigation Dist. v. Dep't of the Interior*, 160 F.3d 602, 607-608 (10th Cir. 1998).

In determining whether the *Ex Parte Young* doctrine governs a case, we apply a

four-part framework.

> First, we determine whether the action is against state officials or the state itself.  Second, we look at whether the alleged conduct of the state officials constitutes a violation of federal law.  Third, we assess whether the relief sought is permissible prospective relief or analogous to a retroactive award of damages impacting the state treasury.  Finally, we analyze whether the suit rises to the level of implicating "special sovereignty interests."

*Timpanogos Tribe*, 286 F.3d at 1205 (quoting *ANR Pipeline Co.*, 150 F.3d at

1193).[11]

---

[10]  *See supra* notes 2 and 5.

[11] Relying on a misreading of the Supreme Court's decision in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997), defendants assert that because a state forum is available to plaintiffs, *Ex Parte Young* does not apply. However, *Coeur d'Alene Tribe* clearly states there are *two* instances in which the *Ex Parte Young* doctrine applies.  *Id.* at 270.  The first is when no state forum is available to vindicate federal interests.  *Id.*  The Court then gives a "second

(continued...)

Applying the facts of this case to the doctrine of *Ex Parte Young* renders an easy conclusion. Without question, this action is against state officials acting in their official capacity: the Governor, the Commissioner of the state Board of Education, and the Chairperson of the state Board of Education. Relying upon a decision from the District of Maryland, defendants assert *Ex Parte Young* does not apply because the state was named as a party. *See Farmer v. Ramsay*, 41 F.Supp.2d 587 (D. Md. 1999). However, even that decision acknowledged that while a state may not be sued directly for a violation of the Fourteenth Amendment, a party may seek prospective injunctive relief against state officials. *See id.* at 591. Insofar as plaintiffs seek such relief against defendant state officials, and not the state itself, their claims survive this part of the *Ex Parte Young* inquiry.

It is quite clear that the alleged conduct of the state officials constitutes a violation of the Fourteenth Amendment and, potentially, Title VI. It is also clear that the relief sought, upon amendment of plaintiffs' complaint, is permissible prospective relief: an injunction barring state officials from enforcing SDFQPA in

---

[11](...continued)
instance in which *Young*" applies: "when the case calls for the interpretation of federal law." *Id.* at 274. As counsel for defendants surely would concede, the case now before is an obvious example of the second instance.

a manner that violates federal law.[12]  Although "[i]n many instances, even prospective relief will burden the state's treasury to some degree," *Elephant Butte*, 160 F.3d at 611 (*citing Edelman*, 415 U.S. at 668), this is not such an instance.  Not only will the relief not require the payment of state funds, but more importantly it will "remedy future rather than past wrongs." *Id.* (citations and quotations omitted).

Defendants also assert plaintiffs' claims implicate "special sovereignty interests" similar to those set out in *Coeur d'Alene Tribe*, 521 U.S. at 281-88.  In *Coeur d'Alene Tribe*, following an epic review of the history of state control over navigable waters, the Supreme Court held that a quiet title action for control of such waters implicated special sovereignty interests.  This court, in *ANR Pipeline*, 150 F.3d at 1193-94, held that states possess a special sovereignty interest in its tax collection system.  "[I]t is impossible to imagine that a state government could continue to exist without the power to tax." *Id.* at 1193.  But we note that "special sovereignty interests" exist only in "particular and special circumstances." *Coeur d'Alene Tribe*, 521 U.S. at 287.  This court has described *Coeur d'Alene* as an "extreme and unusual case." *Harris v. Owens*, 264 F.3d 1282, 1293 (10th Cir. 2001) (*quoting Elephant Butte*, 160 F.3d at 612). *See also J.B. v. Valdez*, 186 F.3d 1280, 1286-87 (10th Cir. 1999).  Defendants have not

---

[12] *See supra* note 3.

come close to convincing us that the case here is either extreme or unusual.

Again, defendants' arguments are based on plaintiffs' unamended complaint and thus focus on the state's "special sovereignty interest" in enacting and revising its own laws rather than having a court order the legislature to revise laws a certain way. They present no arguments as to how enjoining officials from enforcing a state school finance law would implicate the "special sovereignty interests" of the sort described in *ANR* and *Coeur d'Alene Tribe*. We cannot see how the facts presented make this an "extreme and unusual case" that would require a ruling that the relief requested implicates "special sovereignty interests."[13] We thus hold that defendant state officials are not protected by the Eleventh Amendment, pursuant to the *Ex Parte Young* doctrine.

For the forgoing reasons, we **AFFIRM** the decision of the district court denying defendants' motion to dismiss on the basis of Eleventh Amendment

---

[13] Defendants also assert *Ex Parte Young* does not apply because defendants do not have the power to give plaintiffs the relief they seek. Their argument is premised on plaintiffs' original complaint seeking an injunction forcing a change in state law. If plaintiffs amend their complaint as they have indicated and seek an injunction prohibiting defendants from *enforcing* a state law found to be violative of federal law, defendants' contentions on this point will become moot. Even defendants concede that the Board of Education has the "general supervision of public schools," Aplt. Br. at 45, the governor and the named officials of the Board of Education are charged with enforcing the SDFQPA, making the named officials proper parties to this suit.

immunity.