**M.A.C. and D.C.C. by D.C. and A.C.; K.A.S. by K.S. and S.K.S.; M.C. by J.C. and R.C.; D.N. by M.A.N.; B.G. by C.G.; C.M.E. by C.E. and B.E.; D.P by B.P. and J.P.; C.C. by T.C. and K.C.; and the Arc of Utah, on behalf of themselves and all other similarly situated individuals, Plaintiffs,**

v.

**Rod L. BETIT, Executive Director of the Utah State Department of Health; Utah State Department of Health; Michael Deily, Director, Division of Heath Care Financing, Utah State Department of Heath; Utah Division of Health Care Financing; Fran Morse, Director, Division of Services for People with Disabilities, Utah State Department of Human Services; Utah Division of Services for People with Disabilities, Defendants.**

No. 2:02CV1395.

United States District Court,
D. Utah,
Central Division.

Aug. 26, 2003.

Robert B. Denton, Disability Law Center, John Pace, Salt Lake City, UT, for Plaintiffs.

Craig L. Barlow, Joel Ferre, Douglas W Springmeyer, Utah Attorney General's Office, Salt Lake City, UT, for Defendants.

## MEMORANDUM DECISION AND ORDER

KIMBALL, District Judge.

This matter is before the court on Defendants' Motion to Dismiss, Plaintiffs' Motion for Class Certification, and Plaintiffs' Cross Motion for Partial Summary Judgment. A hearing on these motions was held June 19, 2003. Defendants Rod Betit et al. ("Defendants") were represented by Joel A. Ferre, and Plaintiffs M.A.C. et al. ("Plaintiffs" or "proposed plaintiff class") were represented by Robert B. Denton. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the motions under advisement, the court has further considered the law and facts relating to these motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

### I. BACKGROUND

Plaintiffs, a proposed class of people with disabilities, allege that Defendants have violated the Medicaid Act, the Americans with Disabilities Act ("ADA"), and section 504 of the Rehabilitation Act of 1973 (" § 504" or "Rehabilitation Act") by placing Plaintiffs on a waiting list for Medicaid Home and Community Based Services ("HCBS waiver"). Defendants are state agencies and individuals who administer the Medicaid program in Utah. The proposed plaintiff class is composed of all current and future Medicaid-eligible individuals residing in Utah who, because of

their developmental disabilities or mental retardation have or will be determined to be eligible for, and are or will be on the waiting list to receive, services under the HCBS waiver by the Division of Services for People with Disabilities. There are approximately 1316 individuals currently on the waiting list who have an immediate need for services.

The Medicaid program, established by Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., is a cooperative federal-state program created to provide medical assistance to needy families and individuals. States are not required to participate in the Medicaid program, but once a state elects to participate, it must do so in accordance with federal statutes and regulations. 42 U.S.C. § 1396a(a)(10). Each state participating in the Medicaid program must provide certain mandatory services. *Id.* However, some Medicaid services are optional at the discretion of each state. *Id.* States participating the Medicaid program are required to develop a comprehensive plan for the provision of services that must be approved by the Centers for Medicare and Medicaid Services ("CMS"). 42 U.S.C. § 1396a(b). The State of Utah has chosen to participate in the Medicaid program and has opted to provide intermediate care facility services for mentally retarded or developmentally disabled individuals ("ICF/MR").

In addition to the mandatory and optional services, a state may request approval from the Secretary for Health and Human Services ("Secretary") to provide Medicaid services designed as an alternative to long term institutional care. The HCBS waiver program allows states to waive certain standard Medicaid mandates applicable to state plan services in developing a plan for noninstitutional alternative services. 42 U.S.C. § 1396n(c)(1). Utah has received approval to provide HCBS waiver services to individuals with developmental disabili-

ties or mental retardation. The comparability of services mandate of 42 U.S.C. § 1396a(a)(10)(A) and (B) has been waived to restrict these services to otherwise eligible individuals with developmental disabilities or mental retardation and to cap the number of recipients based on a number set by CMS or the Utah Legislature. The cost of providing HCBS waiver services may not exceed the cost of care for the identical population in an institutional setting. 42 U.S.C. § 1396n(c)(2)(D).

While the Medicaid Act does not place a limit on the number of individuals to whom Utah can provide ICF/MR services, CMS may authorize an upper limit on the number of "unduplicated individuals" Utah may serve under an HCBS waiver program. 42 C.F.R. § 441.303(f)(6); *see also* 42 U.S.C. §§ 1396n(c)(2)(C), (c)(9), (c)(10). Utah has requested and received approval to limit HCBS waiver services to 3822 individuals. Utah may request from CMS a modification of the HCBS waiver, including the cap on the waiver. CMS must respond within 90 days to a state's request to modify an HCBS waiver.

Plaintiffs allege that Utah has chosen to use the cap in the HCBS waiver to limit those who can receive services under the waiver. Plaintiffs further assert that Utah has never requested a modification of the cap in order to serve all individuals for whom HCBS waiver services are medically necessary. Those individuals above the cap who request HCBS waiver services are placed on a waiting list and categorized into two groups: those with an immediate need for HCBS waiver services and those with a future need for such services. Plaintiffs and the proposed plaintiff class will be or have been determined by Defendants to have an immediate need for HCBS waiver services. Plaintiffs allege that some individuals within the plaintiff

class have been on the waiting list for over 10 years.

Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), Defendants move this court to dismiss Plaintiffs' complaint on the grounds that Plaintiffs lack standing to assert a claim under the Medicaid Act and Plaintiffs' ADA and § 504 claims fail to state a claim for which relief may be granted. Defendants further move this court to dismiss Plaintiffs' complaint because Plaintiffs' claims are barred by the Eleventh Amendment. Plaintiffs filed a Motion for Class Certification under the Federal Rules of Civil Procedure 23(b)(2), seeking injunctive and declaratory relief, and a Cross Motion for Partial Summary Judgment pursuant to FRCP 56(c), moving this court to find that none of Plaintiffs' claims are barred or limited by the Eleventh Amendment.

## II. DISCUSSION

### A. Plaintiffs' Motion for Class Certification

For certification of a plaintiff class, the action must meet the four requirements of FRCP 23(a). Specifically, a plaintiff must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). Courts apply this rule liberally. *See General Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

■ First, joinder of every current and future individual on the HCBS waiver waiting list is impracticable in that there are 1,316 people currently on the waiting list who are geographically dispersed throughout Utah. Because each of the proposed class members qualify for Medicaid-reimbursable institutional services, they by definition lack the financial resources on their own. Thus, the first requirement of impracticability is established.

■ Second, the material facts shared by each class member are nearly identical in that Plaintiffs allege that each proposed class member is being denied medically necessary waiver services sufficient in amount, duration, and scope, in violation of the Medicaid Act; each is being denied waiver services with reasonable promptness in violation of the Medicaid Act; each is being denied a meaningful choice between the receipt of HCBS waiver services and institutionalization in violation of the Medicaid Act; and each is threatened with unnecessary institutionalization in violation of the ADA and § 504. Thus, the second requirement of commonality is established.

Third, because the material factual circumstances and the legal claims and relief sought are identical as between the named plaintiffs and the class they seek to represent, the third requirement of typicality is met.

■ Fourth, Plaintiffs have met the requirement of adequacy. Plaintiffs seeking class certification must demonstrate that (a) counsel for named plaintiffs are competent to conduct the litigation as a class action, and (b) the interests of the party and the proposed class do not conflict. *See Smith v. Josten's Am. Yearbook Co.,* 78 F.R.D. 154, 162 (D.Kan.1978). Plaintiffs' counsel are qualified to conduct class action litigation in that they have previous experience in class actions and civil rights litigation. Additionally, Plaintiffs allege that no antagonistic interests exist between the named plaintiffs and members of the proposed class because the interests are identical in terms of material facts, legal theories, and relief sought. Thus, the fourth requirement of adequacy is met.

■ A class action is appropriate under FRCP 23(b)(2) where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Plaintiffs allege that Defendants' decision to maintain an HCBS waiver waiting list is a matter of policy, and it is not directed at any single individual on the list. Because the complaint seeks injunctive and declaratory relief that would reverse this policy if granted, the actions complained of are generally applicable to the class and thus amenable to injunctive and declaratory relief. Therefore, Plaintiffs' Motion for Class Certification is granted.

### B. Defendants' Motion to Dismiss Plaintiffs' Medicaid Act, ADA, and § 504 Claims

Defendants have moved to dismiss Plaintiffs' Medicaid Act, ADA, and § 504 claims pursuant to FRCP 12(b)(1) and 12(b)(6). In ruling on a motion to dismiss under FRCP 12(b)(6), a court must determine whether the factual allegations in the complaint, if true, would entitle the plaintiff to a legal remedy. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal is appropriate only when "the plaintiff can prove no set of facts in support of the claims that would entitle him to relief." *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1251 (10th Cir.1999). The court must accept all well-pleaded facts as true, construe those facts liberally in a light most favorable to the plaintiff, and "resolve all reasonable inferences in plaintiff's favor." *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996). Because Defendants have made a facial challenge to Plaintiffs' allegations regarding subject matter jurisdiction, the standard of review is the same as an FRCP 12(b)(6) standard. *United States v.*

*Rodriguez–Aguirre*, 264 F.3d 1195, 1203 (10th Cir.2001). Therefore, the same standard will be applied to both Defendants' 12(b)(1) and 12(b)(6) motions to dismiss.

### 1. Plaintiffs' Medicaid Act Claims

■ Defendants assert that Plaintiffs lack standing because they have no protected right to HCBS waiver services and have failed to identify an underlying right to which they are entitled. *See Lewis v. Casey*, 518 U.S. 343, 350–51, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Plaintiffs argue that there is an entitlement to HCBS waiver services in that while HCBS waiver services are optional, once an optional program is included in a state plan and approved by CMS, it must be treated as an entitlement like all other Medicaid services and enforced pursuant to 42 U.S.C. § 1983. *See Doe v. Chiles*, 136 F.3d 709, 715 (11th Cir.1998).

Plaintiffs' complaint alleges five causes of action asserting violations of the Medicaid Act. Specifically, Plaintiffs assert that (1) Defendants' denial of HCBS waiver services to Plaintiffs violates the Medicaid Act; (2) Defendants' denial of HCBS waiver services to Plaintiffs is not reasonably related to the objectives of the Medicaid act and thus violates the Act; (3) Defendants' denial of HCBS waiver services to Plaintiffs withholds services sufficient in amount, duration, and scope to reasonably achieve their purpose in violation of 42 C.F.R. § 440.230(b); (4) Defendants' placement of Plaintiffs on a waiting list for HCBS waiver services violates the Medicaid Act's reasonable promptness mandate of 42 U.S.C. § 1396a(a)(8); and (5) by denying Plaintiffs HCBS waiver services while offering them ICF/MR services, Defendants have violated the freedom of choice provisions of 42 U.S.C. § 1396a(a)(23)(A) and 42 U.S.C. § 1396n(c)(2)(C).

The Medicaid Act was enacted by Congress pursuant to its spending power. For legislation enacted pursuant to Congress's spending power, the general remedy for state noncompliance is not a private right of action but an action by the federal government to terminate the funds provided to the state. *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Since *Pennhurst,* the Supreme Court has only twice found spending power legislation to confer individual rights. First, the Supreme Court in *Wright v. Roanoke Redevelopment and Housing Authority* found that nothing in the Housing Act or the Brooke Amendment to the Housing Act evidenced that Congress intended to preclude a private right of action under 42 U.S.C. § 1983 for the enforcement of tenants' rights. 479 U.S. 418, 424–25, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). Second, the Supreme Court in *Wilder v. Virginia Hospital Association* also found that the Medicaid Act creates an enforceable right by health care providers under 42 U.S.C. § 1983 to the adoption of reasonable reimbursement rates that are adequate to meet the costs of an efficiently and economically operated facility that provides care to Medicaid patients. 496 U.S. 498, 510, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990).

Some courts have found a private right of action for the beneficiaries of at least some of the Medicaid provisions at issue in the instant case. *See, e.g., Chiles,* 136 F.3d at 719 (finding that the reasonable promptness mandate created a federal right enforceable under § 1983); *Wood v. Tompkins,* 33 F.3d 600, 608 (6th Cir.1994) (holding that the freedom of choice provision created a federal right of action); *Martin v. Taft,* 222 F.Supp.2d 940, 977–78 (S.D.Ohio 2002) (finding that the comparability of services, reasonable promptness, and freedom of choice provisions all created a federal right enforceable under § 1983). Courts have based this private right of action upon the three-part test in *Blessing v. Freestone,* which provides:

First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms.

520 U.S. 329, 340–41, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (citations omitted). However, the Supreme Court in *Gonzaga University v. Doe* rejected the notion that *Blessing* "permit[s] anything short of an unambiguously conferred right to support a cause of action brought under § 1983." 536 U.S. 273, 282, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). Specifically, the *Gonzaga* Court stated that the confusion over the *Blessing* three-part test

has led some courts to interpret *Blessing* as allowing plaintiffs to enforce a statute under § 1983 so long as the plaintiff falls within the general zone of interest that the statute intended to protect; something less than what is required for a statute to create rights enforceable directly from the statute itself under an implied right of action.

536 U.S. at 283, 122 S.Ct. 2268. The Court goes on to hold that "it is *rights,* not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of [§ 1983]." *Id.* (emphasis in original). The *Gonzaga* Court concluded that the statute at issue in that case, the Family Educational Rights and Privacy Act, lacks the rights-creating language required to evidence the necessary congressional intent to create new rights and thus did not

confer individual enforceable rights. *Id.* at 287, 122 S.Ct. 2268.

The *Gonzaga* Court stated that for a statute to confer a private right of action, the statutory language must be " 'phrased in terms of the persons benefited.' " *Id.* at 284, 122 S.Ct. 2268 (quoting *Cannon v. Univ. of Chicago,* 441 U.S. 677, 692 n. 13, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)). The Court noted its previous finding that Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972 create individual rights in that both statutes contain rights-creating language " 'with an unmistakable focus on the benefited class.' " *Id.* (quoting *Cannon,* 441 U.S. at 691, 99 S.Ct. 1946). Specifically, the Court stated that Title VI provides: "*No person* in the United States *shall* . . . be subjected to discrimination under any program or activity receiving Federal financial assistance" on the basis of race, color, or national origin. *Id.* at 284 n. 3, 122 S.Ct. 2268 (quoting 42 U.S.C. § 2000d). Further, the Court noted that Title IX states: "*No person* in the United States *shall,* on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance." *Id.* (quoting 20 U.S.C. § 1681(a)). The Court concluded that "[w]here a statute does not include this sort of explicit 'right- or duty-creating language' we rarely impute to Congress an intent to create a private right of action." *Id.*

■ The authorizing provision of the Medicaid Act does not contain rights-creating language unequivocally conferring an individual right to support a cause of action under § 1983. Specifically, the provision provides:

> For the purpose of enabling each State, as far as practicable under the conditions of each State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this subchapter. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans for medical assistance.

42 U.S.C. § 1396. This statute merely enables states to administer the Medicaid program for the intended beneficiaries and authorizes payment to states participating in the Medicaid program; it does not create an unmistakable enforceable right in those beneficiaries. *See Sabree v. Houston,* 245 F.Supp.2d 653, 659 (E.D.Pa.2003).

■ Furthermore, the Medicaid Act specifically provides that if the Secretary finds that a state agency fails to "comply substantially" with the provisions in the Act in administering the state plan, the Secretary is to notify the state agency that it will no longer receive Medicaid funds until the Secretary is convinced that the state agency is complying with the provisions in the Act. 42 U.S.C. § 1396c. Thus, the statute merely describes what states must do to ensure continued funding and authorizes the Secretary to withhold or limit Medicaid payments to a state in violation of any provisions within that subsection. It does not, however, give rise to a private right of action for individual beneficiaries of the Medicaid Act. *See Blessing,* 520 U.S. at 343, 117 S.Ct. 1353 (holding that the "substantial compliance" provision in Title IV–D of the Social Security Act does not create an individual entitlement to services under 42 U.S.C. § 1983 but is

merely a standard by which to measure the systemwide performance of a state's Title IV–D program).

Additionally, none of the Medicaid Act provisions expressly cited in Plaintiffs' complaint contains the rights-creating language specified in *Gonzaga*. In particular, Plaintiffs allege that Defendants have violated 42 C.F.R. § 440.230(b), which provides that "[e]ach service must be sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b). However, the language of this provision does not unambiguously confer rights to individuals, it merely provides that a state plan must include amount, duration, and scope standards.

Plaintiffs further allege that Defendants have violated the reasonable promptness requirement of 42 U.S.C. § 1396a(a)(8) providing that "all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). Similarly, the reasonable promptness provision does not contain the explicit rights-creating language described in *Gonzaga* and merely places certain conditions upon a state seeking Medicaid funding.

Finally, Plaintiffs assert that Defendants have violated the freedom of choice provisions of 42 U.S.C. § 1396a(a)(23)(A) and 42 U.S.C. § 1396n(c)(2)(C). The Medicaid Act's freedom of choice provisions require a state plan to provide that eligible individuals "[m]ay obtain such assistance from any institution, agency ... or person, qualified to perform the service or services required ... who undertakes to provide him such services." 42 U.S.C. § 1396a(a)(23)(A). Additionally, 42 U.S.C. § 1396n(c)(2)(C) provides:

"A waiver shall not be granted under this subsection unless the State provides assurances satisfactory to the Secretary that ... such individuals who are determined to be likely to require the level of care provided in a hospital, nursing facility, or intermediate care facility for the mentally retarded are informed of the feasible alternatives, if available under the waiver, at the choice of such individuals, to the provision of inpatient hospital services, nursing facility services, or services in an intermediate care facility for the mentally retarded."

42 U.S.C. § 1396n(c)(2)(C). Again, the freedom of choice provisions do not contain the unambiguous rights-creating language of *Gonzaga*, and consequently, there is no private right of action based on these provisions.

While Plaintiffs cite numerous cases for the proposition that the various provisions of the Medicaid Act noted above confer a private right of action, each case cited by Plaintiffs is either a pre-*Gonzaga* case (*see Rodriguez v. City of New York*, 197 F.3d 611 (2d Cir.1999); *Wood v. Tompkins*, 33 F.3d 600 (6th Cir.1994); *Antrican v. Buell*, 158 F.Supp.2d 663 (E.D.N.C.2001); *Boulet v. Cellucci*, 107 F.Supp.2d 61 (D.Mass. 2000); *Lewis v. New Mexico Dep't of Health*, 94 F.Supp.2d 1217 (D.N.M.2000), *aff'd* 261 F.3d 970 (10th Cir.2001); *Cramer v. Chiles*, 33 F.Supp.2d 1342 (S.D.Fla. 1999); *Smith v. Rasmussen*, 57 F.Supp.2d 736 (N.D.Iowa 1999); *Rolland v. Cellucci*, 52 F.Supp.2d 231 (D.Mass.1999); *Smith v. Palmer*, 24 F.Supp.2d 955 (N.D.Iowa 1998); *Cherry v. Tompkins*, 1995 WL 502403 (S.D.Ohio); *Sobky v. Smoley*, 855 F.Supp. 1123 (E.D.Cal.1994)) or a post-*Gonzaga* case that completely fails to address *Gonzaga* (*see Martin v. Taft*, 222 F.Supp.2d 940 (S.D.Ohio 2002); *Alexander v. Novello*, 210 F.R.D. 27 (E.D.N.Y.2002)), or a post-*Gonzaga* case that only superficially addresses *Gonzaga* (*see Bryson v. Shumway*, 308 F.3d 79 (1st Cir.2002); *Rabin v. Wilson–Coker*, 266 F.Supp.2d 332 (D.Conn.2003)).

The two post-*Gonzaga* cases citing *Gonzaga* have not persuaded this court to find a private right of action for the Medicaid provisions at issue in this case. Specifically, the First Circuit in *Bryson v. Shumway* found that a private right of action exists under 42 U.S.C. § 1983 to enforce Medicaid's reasonable promptness mandate for "eligible" individuals for whom space was available. 308 F.3d at 89. While the court recognized that *Gonzaga* requires that a federal private right of action "must be 'unambiguously conferred' in order to support a cause of action under § 1983," the court continued to address each element of the *Blessing* test without reference to *Gonzaga's* categorical requirement that a statute contain rights-creating language for a private right of action to exist. *Bryson*, 308 F.3d at 88–89 (quoting *Gonzaga*, 536 U.S. at 282, 122 S.Ct. 2268). Furthermore, the *Bryson* court held that a private right of action exists for those individuals who were on a waiting list for HCBS waiver services but only for whom slots were available. *Id.* at 88. However, in the instant case, Plaintiffs are individuals who are or will be on the waiting list for HCBS waiver services but for whom slots are not currently available. Thus, even if this court found *Bryson's* reasoning persuasive, Plaintiffs would still not have a private right of action, as they are not "eligible individuals" under the reasonable promptness provision. 42 U.S.C. § 1396a(a)(8).

The other post-*Gonzaga* case in which the court found a private right of action to enforce a Medicaid provision is *Rabin v. Wilson–Coker*. In that case, the United States District Court for the District of Connecticut noted that while *Gonzaga* requires that Congress's intent to permit private enforcement of actions must be clear and unmistakable, it nonetheless held that a private right of action exists to enforce a Medicaid Act provision under the three-part *Blessing* test without addressing the specific language within the statute that unambiguously confers an enforceable right. *Rabin*, 266 F.Supp.2d at 341. Thus, *Rabin* is unpersuasive.

Therefore, because none of the Medicaid Act provisions at issue contain the unambiguous rights-creating language required by *Gonzaga*, this court finds that Plaintiffs do not have a private right of action to enforce the Medicaid Act. Thus, Counts I through V are dismissed.

## 2. Plaintiffs' ADA and § 504 Claims

Title II of the ADA prohibits a public entity from discriminating against qualified individuals based on disability. Specifically, it provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Regulations implementing provisions of Title II include an integration mandate, which provides that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). Similarly, the Rehabilitation Act prohibits discrimination of people with disabilities by entities receiving federal funds. *See* 29 U.S.C. § 793(a). The Rehabilitation Act's regulations also contain an integration mandate providing that "[r]ecipients shall administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons." 28 C.F.R. § 41.51(d).

■ Defendants assert that Plaintiffs' ADA and § 504 claims alleging that Defendants have violated the integration mandates of both the ADA and § 504 fail as a matter of law in that Plaintiffs already live

in the most integrated setting possible, the family home. Further, Defendants contend that the ADA and § 504 do not apply to Plaintiffs because Plaintiffs do not currently live within an institution. However, Plaintiffs argue that the integration mandates of the ADA and § 504 apply equally to those individuals already institutionalized and those at risk of institutionalization, like Plaintiffs.

Because there is no language in the integration mandates to suggest that a plaintiff must currently be institutionalized to bring a claim under the ADA or Rehabilitation Act, the court agrees with Plaintiffs. *See Fisher v. Oklahoma Health Care Auth.,* 335 F.3d 1175, 1181 (10th Cir.2003). The Supreme Court in *Olmstead v. Zimring* held that Title II of the ADA requires states to provide community-based treatment for individuals with mental disabilities when (1) the state's treatment professionals determine that community placement is appropriate, (2) the affected individuals do not challenge such a placement, and (3) community-based treatment may be reasonably accommodated considering state resources and the needs of others with mental disabilities. 527 U.S. 581, 587, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999). The Court found that "unjustified isolation [of the mentally disabled] ... is properly regarded as discrimination based on disability" under Title II of the ADA. *Id.* at 597, 119 S.Ct. 2176.

In *Fisher v. Oklahoma Health Care Authority,* the Tenth Circuit recently ruled that there is nothing in the plain language of the ADA's integration mandate that limits its protection to only those individuals currently institutionalized. 335 F.3d at 1181. The court further held that the protections of the integration mandate "would be meaningless if plaintiffs were required to segregate themselves by entering an institution before they could challenge an allegedly discriminatory law or policy that threatens to force them into segregated isolation." *Id.* Additionally, the court noted that while the plaintiffs in *Olmstead* were institutionalized when they brought their claim, there is nothing in that decision requiring that plaintiffs be institutionalized prior to bringing a claim to enforce the ADA's integration mandate. *Id.*

Plaintiffs' complaint properly states a claim under the ADA and § 504 in that Plaintiffs have been or will be determined by Defendants to have an immediate need for HCBS waiver services, and the placement of Plaintiffs on the HCBS waiver waiting list threatens Plaintiffs with institutionalization because it forces Plaintiffs to choose between staying in the community without any services or entering an institution in order to receive services. Thus, Plaintiffs have properly stated a claim for violating the integration mandates of ADA and § 504.

## C. Eleventh Amendment Immunity

Pursuant to Fed.R.Civ.P. 12(b)(6), Defendants have moved this court to dismiss Plaintiffs' claims asserting that they are barred by the Eleventh Amendment. Plaintiffs filed a Cross Motion for Partial Summary Judgment, asking this court to find that none of Plaintiffs' claims against either the Agency Defendants [1] or the Individual Defendants [2] is barred or limited by the Eleventh Amendment.

---

1. The Agency Defendants are the Utah State Department of Health; the Utah Division of Health Care Financing, and the Utah Division of Services for People with Disabilities.

2. The Individual Defendants are Rod L. Betit, Executive Director of the Utah State Department of Heath; Michael Deily, Director, Division of Health Care Financing, Utah State Department of Health; Fran Morse, Director, Division of Services for People with Disabilities, Utah State Department of Human Services.

A motion for summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). While the party moving for summary judgment bears the burden of demonstrating that there are no issues of material fact, the party opposing summary judgment must set forth specific facts showing that there is a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548. "An issue of material fact is 'genuine' if a 'reasonable jury could return a verdict for the nonmoving party.'" *Universal Money Ctrs., Inc. v. AT & T Co.,* 22 F.3d 1527, 1529 (10th Cir.1994) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). All facts are construed and reasonable inferences are made in the light most favorable to the nonmoving party. *See Byers v. City of Albuquerque,* 150 F.3d 1271, 1274 (10th Cir.1998).

 The Eleventh Amendment prohibits suits in federal court against a state brought by a state's own citizens. *See Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). However, Congress may set aside such immunity or a state itself may waive its sovereign immunity. *See Robinson v. Kansas,* 295 F.3d 1183, 1188 (10th Cir. 2002). In addition, under the *Ex Parte Young* doctrine, when a private party sues a state officer individually for prospective injunctive or declaratory relief, the suit is not regarded as a suit against the state and the Eleventh Amendment does not apply. *Id.* (citing *Ex Parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908)).

### 1. Agency Defendants

 In 1986, Congress amended the Rehabilitation Act to manifest its clear intent that the Act applies to states and state entities. *See* 42 U.S.C. § 2000d–7(a)(1). Specifically, the amendment provides, "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of section 504 of the Rehabilitation Act. . . ." *Id.* Because Utah has "accept[ed] federal financial assistance as specified in 42 U.S.C. § 2000d–7(a)(1)," it has waived sovereign immunity from suit in federal court. *Robinson,* 295 F.3d at 1190. Thus, the court finds that Plaintiffs have properly asserted a claim against the Agency Defendants under § 504. Therefore, as to the Agency Defendants, Defendants' Motion to Dismiss on the issue of Eleventh Amendment immunity under § 504 is denied, and Plaintiffs' Cross Motion for Partial Summary Judgment on the same is granted.

 Because the Agency Defendants are arms of the state and Plaintiffs have not argued otherwise, the Agency Defendants cannot be sued under the ADA. *See Board of Trustees of the Univ. of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). Thus, as to the Agency Defendants, Plaintiffs' Cross Motion for Partial Summary Judgment on the ADA claim is denied, and Defendants' Motion to Dismiss based on Eleventh Amendment immunity is granted.

### 2. Individual Defendants

 The Tenth Circuit has held that in order to bring a cause of action against state officials under the *Ex Parte Young* doctrine, a plaintiff must demonstrate that "(1) the plaintiffs are suing state officials, rather than the state itself; (2) the plaintiffs have alleged a non-frivolous violation of federal law; (3) the plaintiffs seek pro-

spective equitable relief, rather than retroactive monetary relief from the state treasury; and (4) the suit does not implicate 'special sovereignty interests.'" *Lewis v. New Mexico Dep't of Health,* 261 F.3d 970, 975 (10th Cir.2001). In the instant case, Plaintiffs have sued the Individual Defendants in their official capacities, Plaintiffs have alleged non-frivolous violations of federal law under the ADA and § 504, the relief sought is purely prospective in nature, and the suit does not implicate special sovereignty interests. Thus, the court finds that Plaintiffs have properly asserted a claim against the Individual Defendants under both the ADA and § 504. Therefore, as to the Individual Defendants, Defendants' Motion to Dismiss on the issue of Eleventh Amendment immunity under the ADA and § 504 is denied, and Plaintiffs' Cross Motion for Partial Summary Judgment on the same issue is granted.

Because the court has granted Defendants' Motion to Dismiss Plaintiffs' Medicaid claims entirely, the issue of Eleventh Amendment immunity under 42 U.S.C. § 1983 is rendered moot.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Plaintiffs' Motion for Class Certification [docket # 4] is GRANTED, Defendants' Motion to Dismiss [docket # 10] is GRANTED in part and DENIED in part. Counts I through V are dismissed as to all Defendants and Count VI is dismissed as to the Agency Defendants. All other claims remain. Counts VI and VII remain. Plaintiffs' Cross Motion for Partial Summary Judgment [docket # 14] is GRANTED in part and DENIED in part.