**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 3, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARTIN K. EBY CONSTRUCTION
COMPANY, INC.,

     Plaintiff - Appellee,

v.

ONEBEACON INSURANCE
COMPANY, as successor to Commercial
Union Insurance Company,

     Defendant,

and

KELLOGG BROWN & ROOT, LLC,

     Defendant - Appellant.

----------------------------------------------------

CONTINENTAL CASUALTY
COMPANY; NATIONAL FIRE
INSURANCE COMPANY OF
HARTFORD, as successor by merger with
Transcontinental Insurance Company;
COLUMBIA CASUALTY COMPANY;
VALLEY FORGE INSURANCE
COMPANY,

     Plaintiffs,

v.

No. 13-3076
(D.C. No. 6:08-CV-01250-MLB)

ONEBEACON INSURANCE
COMPANY, as successor to Commercial
Union Insurance Company,

      Defendant,

and

TRAVELERS CASUALTY AND
SURETY COMPANY, as successor to
Aetna Casualty and Surety Company;
UNITED STATES FIDELITY AND
GUARANTY COMPANY; ST. PAUL
FIRE AND MARINE INS. CO.; ATHENA
ASSURANCE COMPANY; MARTIN K.
EBY CONSTRUCTION COMPANY,
INC.,

      Defendants - Appellees,

and

KELLOGG BROWN & ROOT, LLC,

      Defendant - Appellant.

—————————————————

**ORDER**

—————————————————

Before **BACHARACH**, **McKAY**, and **McHUGH**, Circuit Judges.

—————————————————

This matter is before the court on appellant Kellogg Brown & Root's *Petition for Panel Rehearing*. Consistent with our order dated December 31, 2014, we also have responses from the appellees. Upon consideration, we grant panel rehearing in part with respect to proposition IV in the rehearing request. We otherwise deny the petition in full.

An amended opinion is attached to this order. The clerk is directed to substitute this opinion for the one that issued originally on December 9, 2014.

Entered for the Court

*Elisabeth A. Shumaker*

ELISABETH A. SHUMAKER, Clerk

3

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 3, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MARTIN K. EBY
CONSTRUCTION COMPANY,
INC.,

      Plaintiff-Appellee,

    v.

ONEBEACON INSURANCE
COMPANY, as Successor to
Commercial Union Insurance
Company,

and

KELLOGG BROWN & ROOT,
LLC.,

      Defendant-Appellant.

No. 13-3076

CONTINENTAL CASUALTY
COMPANY; NATIONAL FIRE
INSURANCE COMPANY OF
HARTFORD, as Successor by
Merger with Transcontinental
Insurance Company; COLUMBIA
CASUALTY COMPANY; VALLEY
FORGE INSURANCE COMPANY,

      Plaintiffs,

v.

ONEBEACON INSURANCE
COMPANY, as Successor to
Commercial Union Insurance

Company,

Defendant,

and

TRAVELERS CASUALTY AND SURETY COMPANY, as Successor to Aetna Casualty and Surety Company; UNITED STATES FIDELITY AND GUARANTY COMPANY; ST. PAUL FIRE AND MARINE INS. CO.; ATHENA ASSURANCE COMPANY; MARTIN K. EBY CONSTRUCTION COMPANY, INC.,

Defendants-Appellees,

and

KELLOGG BROWN & ROOT, LLC,

Defendant-Appellant.

---

**Appeal from the United States District Court**
**For the District of Kansas**
**(D.C. No. 6:08-CV-01250-MLB**
**And 2:08-CV-02392-MLB)**

---

Lauren B. Harris, Porter Hedges LLP, Houston, Texas (David M. Rapp and Eric Barth, Hinkle Law Firm, LLC, Wichita, Kansas, and Jonna N. Summers, Porter Hedges, LLC, with her on the briefs) for Plaintiff-Appellant Kellogg Brown & Root, LLC.

2

James Oliver, Foulston Siefkin LLP, Overland Park, Kansas (Randall K. Rathburn, Depew Gillen Rathburn & McInteer LC, and Jeffery A. Jordan, Foulston Siefkin LLP, Overland Park, Kansas, with him on the brief) for Defendant-Appellee Martin K. Eby Construction Co., Inc.

Donna J. Vobornik, Dentons US LLP, Chicago, Illinois (Geoffrey J. Repo and William T. Barker, Dentons US LLP, Chicago, Illinois, with her on the brief) for Defendants-Appellees Travelers, et al.

---

Before **BACHARACH**, **McKAY**, and **McHUGH**, Circuit Judges.

---

**BACHARACH**, Circuit Judge.

---

This appeal involves indemnity and insurance.

The indemnity issues arise out of a promise by Martin K. Eby Construction Company's predecessor to build a water pipeline. To build the water pipeline, Eby engaged another company (the predecessor to Kellogg Brown & Root, LLC), promising indemnity for claims resulting from Eby's work.

While building the water pipeline, Eby accidentally hit a methanol pipeline, causing a leak. At the time, no one knew about the leak. It was discovered over two decades later, and the owner of the methanol pipeline had to pay for the cleanup.

The owner of the methanol pipeline sought to recover the expenses from Kellogg and Eby. Kellogg and Eby prevailed, but Kellogg incurred

3

over $2 million in attorneys' fees and costs. Kellogg invoked Eby's indemnity promise, suing Eby and its liability insurer, Travelers Casualty and Surety Co. The district court granted summary judgment to Eby and Travelers, leading Kellogg to appeal. Some of our issues involve Eby; others involve Travelers.

To resolve the Kellogg-Eby portion of the appeal, we must address the enforceability of Eby's promise of indemnity. This promise is broad enough to cover the pipeline owner's claims against Kellogg for its inaction after Eby caused the leak. But we can enforce the indemnity promise only if it was expressly stated and conspicuous. This indemnity clause was not conspicuous; thus, it is unenforceable.

The Kellogg-Travelers appeal turns on Kellogg's argument that Travelers' insurance policy covered liabilities assumed by its insured (Eby).



But, because the indemnity clause is unenforceable, it is as if Eby never agreed to assume Kellogg's liabilities. In the absence of Eby's assumption of Kellogg's liabilities, Travelers did not insure Kellogg.



5

Accordingly, Kellogg is not entitled to indemnity from Eby or insurance coverage from Travelers, and Eby and Travelers were entitled to summary judgment. We affirm.

## I. Standard of Review

We engage in de novo review over the summary judgment rulings. *Holmes v. Colo. Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1199 (10th Cir. 2014). This review requires us to consider the evidence in the light most favorable to Kellogg. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1118 (10th Cir. 2014). Viewing the evidence in this light, we decide whether a genuine issue of material fact exists on coverage for indemnity or insurance. *See SEC v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013). We conclude that no such issue exists, and we affirm the award of summary judgment to Eby and Travelers.

## II. Eby's Indemnity Obligation to Kellogg: The Fair Notice Rule

Eby acknowledges that the indemnity clause covers the claims that had been asserted against Kellogg, but argues that the coverage is unenforceable. We agree.

## A. The Applicability of the Fair Notice Rule to Eby's Promise of Indemnity

To determine enforceability, we must understand the scope of Eby's promise. Eby promised to indemnify Kellogg for all claims, including attorneys' fees and expenses, "directly or indirectly arising from or caused by or in connection with the performance or failure to perform any work" by Eby (or its predecessor). Appellant's App. at 504. This promise covers the pipeline owner's claims against Kellogg, but indemnity coverage is unenforceable under the fair notice rule.

### 1. Coverage for Kellogg's Malfeasance

Kellogg argues that Eby's promise covers only claims involving Eby's malfeasance, not Kellogg's. But this is not what the clause says: It says that Eby will indemnify Kellogg for all claims arising "directly or indirectly" from Eby's work. Thus, the indemnity clause covers claims involving Kellogg's failure to comply with a duty created by something Eby had done.

This clause fits our facts. Eby hit the methanol pipeline and caused the leak, and the pipeline owner claimed that Kellogg should have taken corrective action. Thus, the claims involved Kellogg's wrongdoing, not Eby's. But Kellogg allegedly incurred a duty only because Eby had caused a leak. Thus, the indemnity clause is broad enough to cover the pipeline

7

owner's claims against Kellogg for Kellogg's fault (failure to take corrective action). The resulting issue is the enforceability of that promise. The parties agree that enforceability is governed by Texas law, which restricts indemnity clauses through the "fair notice rule."

### 2. Kellogg's Arguments

Kellogg makes two challenges to the applicability of the fair notice rule:

- The fair notice rule does not apply because Kellogg is seeking indemnity for Eby's conduct, not Kellogg's.

- The jury attributed fault to Eby, not Kellogg.

We reject both arguments.

Kellogg characterizes the pipeline owner's claims as stemming from the damage to the pipeline and points out that the jury attributed that damage to Eby. Because all of the claims can be traced to Eby's conduct, Kellogg argues that it is seeking indemnity for Eby's actions, not Kellogg's. As discussed above, the pipeline owner sued Kellogg for its inaction *after* Eby had caused the leak. Thus, our indemnity issues are unaffected by the jury's finding that Eby had caused the leak.

### 3. Absence of a Reference to Kellogg's Fault

Though the indemnity clause applies, it does so implicitly rather than explicitly because there is no mention of coverage for claims involving the

indemnitee's fault. Thus, we must ask: Does the fair notice rule apply when the indemnity clause covers the indemnitee's fault implicitly, but not explicitly? We conclude the fair notice rule applies in these circumstances.

The indemnity clause covers all claims arising directly or indirectly from Eby's acts. This language is broad enough to cover claims involving Kellogg's failure to take action once Eby damaged the pipeline. Because the indemnity clause covers claims against Kellogg for its own fault, the fair notice rule applies under Texas law. The rule applies even though the indemnity clause doesn't explicitly mention claims involving Kellogg's fault.

In applying the fair notice rule in these circumstances, we are guided by two of the Texas Supreme Court's decisions applying a related rule (the "express negligence rule"): *Ethyl Corp. v. Daniel Construction Co.*, 725 S.W.2d 705 (Tex. 1987), and *Fisk Electric Co. v. Constructors & Associates, Inc.*, 888 S.W.2d 813 (Tex. 1994).

In *Ethyl*, the court held that the express negligence rule applied when the claims involved the indemnitee's fault. *Ethyl Corp.*, 725 S.W.2d at 708. The promise in *Ethyl* broadly covered damages incurred because of

9

the indemnitor's conduct. *Id.* at 707.[1] But the claims involved the indemnitee's fault. *Id.* Under the express negligence rule, a party seeking indemnity from the consequences of its own negligence must specifically express that intent in the four corners of the contract. *Id.* This restriction applied even though the contractual indemnification clause had not referred to coverage for the indemnitee's fault. *Id.* Thus, the Texas Supreme Court concluded that the express negligence rule applies when an indemnity clause implicitly covers claims involving the indemnitee's fault. *Id.*

The indemnity language in *Fisk* was similar. There the clause stated that Fisk "'shall indemnify . . . [Constructors] . . . from and against all claims, damages, losses, and expenses, including but not limited to attorney's fees . . .' arising out of or resulting from the performance of Fisk's work." *Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 814 (Tex. 1994). Though the indemnity clause did not mention the

---

[1] The *Ethyl* agreement stated:

> Contractor shall indemnify and hold Owner harmless against any loss or damage to persons or property as a result of operations growing out of the performance of this contract and caused by the negligence or carelessness of Contractor, Contractor's employees, Subcontractors, and agents or licensees.

*Ethyl Corp.*, 725 S.W.2d at 707.

10

indemnitee's (Constructors') fault, the Texas Supreme Court applied the express negligence rule because the claims involved the indemnitee's fault. *Id.* at 815.

Our case resembles *Ethyl* and *Fisk*.[2] Eby's promise of indemnity does not mention Kellogg's fault. Instead, the clause promises to indemnify Kellogg for money spent defending claims caused by Eby's conduct. This language is broad enough to reach the pipeline owner's claims that

- resulted indirectly from Eby's conduct

- even though the coverage is for claims involving Kellogg's own actions.

Under *Ethyl* and *Fisk*, the fair notice rule can cover promises of indemnity bearing no mention of claims involving the indemnitee's fault.

---

[2] Kellogg relies on *English v. BGP International, Inc.*, 174 S.W.3d 366 (Tex. App. 2005). Kellogg's Opening Br. at 22. There the court held that the fair notice rule did not apply, distinguishing *Fisk*. *English*, 174 S.W.3d at 375. The court explained that in *Fisk*, the express negligence rule applied because the only claim against the indemnitee was based on its negligence. *Id.* In *English*, however, the only claims against the indemnitee were based on the indemnitor's negligence, not the indemnitee's. *Id.*

As discussed in the text, the distinction in *Fisk* applies equally here. Like the indemnity clause in *Fisk*, our clause serves to indemnify the indemnitee (Kellogg) for any claims resulting from the indemnitor's (Eby's) acts. But, like the claimant in *Fisk*, our indemnitee (Kellogg) is being sued only for its own misconduct, not the indemnitor's (Eby's). Thus, Kellogg's reliance on *English* is misplaced.

11

Thus, we must apply the fair notice rule even though the indemnity clause does not refer to claims involving the indemnitee's (Kellogg's) fault.

**B.      The Requirements of the Fair Notice Rule**

We apply the fair notice rule to decide if the indemnity clause can be enforced.  Under this rule, promises to indemnify a party for its own fault must be expressly stated and conspicuous.  *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993).

**C.      Applicability of the Fair Notice Rule to the Pipeline Owner's Claims**

Kellogg has sought indemnity for its fees and expenses to defend five claims:

- fraud,

- nuisance,

- restitution,

- violation of a federal environmental statute, and

- violation of a state environmental statute.

The fair notice rule covers application of the indemnity clause for each claim.

12

### 1.  Fraud

The parties debate the application of the fair notice rule to intentional torts, like fraud.  We conclude that the fair notice rule applies to contractual indemnification for fraud.

The Texas Court of Appeals has held that the fair notice rule restricts clauses indemnifying a party for its intentional torts.  *Hamblin v. Lamont*, 433 S.W.3d 51, 57 (Tex. App. 2013).  Though this holding does not bind us, it does provide guidance.  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857-58 (5th Cir. 2010).  The Texas court's reasoning makes sense:  If Texas public policy restricts indemnity clauses covering a party's negligence, there would be even greater reason to restrict indemnity for a party's intentional wrongdoing.

Kellogg denies the applicability of the fair notice rule to claims involving intentional torts, relying on *DDD Energy, Inc. v. Veritas DGC Land, Inc.*, 60 S.W.3d 880 (Tex. App. 2001), and *English v. BGP International, Inc.*, 174 S.W.3d 366 (Tex. App. 2005).  Kellogg's Opening Br. at 33 n.9; Kellogg's Reply Br. at 9.  In these cases, however, the fair notice rule didn't apply because the contracts indemnified the indemnitees for the indemnitors' intentional torts, not the indemnitees'.  *DDD Energy, Inc.*, 60 S.W.3d at 882; *English*, 174 S.W.3d at 369.  As discussed above,

13

our indemnity clause covered claims involving the indemnitee's

(Kellogg's) torts. Thus, *DDD Energy* and *Veritas* do not affect our issue.

In these circumstances, we take our guidance from the Texas Court of

Appeals and conclude that the fair notice rule applies to the claim against

Kellogg for fraud.

## 2. Nuisance

Kellogg was sued not only for fraud, but also for nuisance. That

claim required proof of

- negligent or intentional invasion of interests or

- abnormal conduct out of place in the surroundings.

*City of Tyler v. Likes*, 962 S.W.2d 489, 503 (Tex. 1997). Regardless of the

claimant's method of proof, the fair notice rule would apply.

Under Texas law, the fair notice rule applies equally to claims

involving negligence,[3] intentional conduct,[4] and abnormal activity (strict

liability).[5] Therefore, the rule would apply to all variants of a nuisance

---

[3]     *See Leonard v. Aluminum Co. of Am.*, 767 F.2d 134, 137 (5th Cir. 1985) (applying Texas law).

[4]     *See* part II(C)(1), above.

[5]     *See Hanson Aggregates W., Inc. v. Ford*, 338 S.W.3d 39, 46 (Tex. App. 2011) (describing nuisance, based on activity out of place in the surroundings, as "essentially a form of strict-liability nuisance"); *see also Hous. Lighting & Power Co. v. Atchison, Topeka, & Santa Fe Ry. Co.*, 890

14

claim. In these circumstances, we conclude that the fair notice rule applies to the pipeline owner's claim against Kellogg for nuisance.

### 3. Federal and State Environmental Statutes

The owner of the methanol pipeline also sued Kellogg for violation of

- the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 94 Stat. 2767, *as amended*, 42 U.S.C. §§ 9601 *et seq.* ("C.E.R.C.L.A.") and

- the Texas Solid Waste Disposal Act, Tex. Health & Safety Code Ann. §§ 361.001-.992 ("S.W.D.A.").

These claims also fall under Texas's fair notice rule.

C.E.R.C.L.A. and the S.W.D.A. apply to owners, operators, and arrangers. 42 U.S.C. § 9607(a)(1), (a)(3); Tex. Health & Safety Code § 361.271(a)(1), (a)(3). For owners and operators, the statutes create strict liability. *See Celanese Corp. v. Martin K. Eby Const. Co.*, 620 F.3d 529, 532 (5th Cir. 2010). But the pipeline owner didn't suggest that Kellogg was an owner or operator of the pipeline; the pipeline owner characterized Kellogg as an "arranger." Kellogg could qualify as an "arranger" only if it had taken "intentional steps to dispose of a hazardous substance."

---

S.W.2d 455, 459 (Tex. 1994) ("[W]e hold that parties to an indemnity agreement must expressly state their intent to cover strict liability claims in specific terms.").

*Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 611 (2009).

Based on this definition of "arranger," the parties disagree over the characterization of these claims: Kellogg says they involve intentional torts; Eby says they involve strict liability. But we have already concluded that Texas's fair notice rule applies to both types of claims. Thus, we need not decide whether the pipeline owner's claim involves strict liability or an intentional tort. Either way, the fair notice rule would apply.

### 4. Restitution

The owner of the methanol pipeline also sued Kellogg for restitution. Restitution is a remedy rather than a theory of liability. *See McCullough v. Scarborough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 891 (Tex. App. 2014) ("[U]njust enrichment is not an independent claim; rather it is a theory of recovery."). But, in its reply brief, Kellogg characterizes the restitution claim as a quasi-contract theory, suggesting that it should be treated like a conventional contract claim. Kellogg's Reply Br. at 10. According to Kellogg, this characterization would prevent application of the fair notice rule. *Id.* We reject this argument.

Restitution does not provide an independent theory of liability; thus, Texas courts have not had any reason to confront applicability of the fair

16

notice rule to restitution claims. Restitution would simply describe the remedy being proposed (disgorgement of the benefits retained by Kellogg) for tortious conduct.

As discussed above, the fair notice rule applies to claims involving the indemnitee's negligence, intentional torts, strict liability, nuisance, and violation of C.E.R.C.L.A. and the S.W.D.A. Because the fair notice rule applies to these theories of liability, the rule applies equally to the remedies (like restitution).

**D.    Failure to Satisfy the Fair Notice Rule's Requirement of Conspicuousness**

In these circumstances, we must apply the fair notice rule to Kellogg's indemnity claim. Applying the rule, we conclude the indemnity clause is unenforceable because it is not conspicuous.[6]

**1.    The Fair Notice Rule's Requirement of Conspicuousness**

As discussed above, indemnity clauses are enforceable only if they expressly and conspicuously state that they cover claims based on the indemnitee's fault. *See* part II(B), above. Because we conclude that Eby's promise was not conspicuous, it is unenforceable.

---

[6]    The district court held that the indemnity clause did not satisfy the express negligence requirement, but did not address the conspicuousness requirement. Nonetheless, we can affirm on this ground if it is supported by the record. *Citizen Center v. Gessler*, 770 F.3d 900, 909 (10th Cir. 2014).

In its reply brief, Kellogg argues that the indemnity clause satisfied the requirement of conspicuousness. Kellogg's Reply Br. at 14. We disagree.

As noted above, the fair notice rule requires an indemnity clause to be conspicuous. *See* part II(B), above. A clause is considered "conspicuous" when it would attract the attention of a reasonable person. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 511 (Tex. 1993). Texas cases provide examples of provisions that would attract attention, such as different size type, all capital letters in a heading, and different colors. *See Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004) (type-size and colors); *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 511 (Tex. 1993) (all capital letters in a heading).

The indemnity language appears on page 86 of a 197-page document. Appellant's App. at 263. The clause, along with the rest of the document, is single-spaced, small type, and in black-and-white. There is nothing, amidst the 197 pages, to capture the attention of a reasonable person.

Kellogg argues that the indemnity clause is mentioned in another document, which is only 4 pages long. That is true. In the 4-page document, labeled "Exhibit C," the indemnity clause is mentioned, stating

18

that Eby's predecessor "agree[d] to be bound by all of the terms, provisions, conditions, indemnification, and liabilities imposed upon Contractor under the terms and provisions of said Contract Documents to the same extent as though the same were copied verbatim herein at length." *Id.* at 264. But, the 4-page document does not state the terms. To learn the terms of the indemnity obligation, a reader must go to "said Contract Documents" and read 86 pages (almost halfway into the document). The table of contents and headings do not help because the indemnity clause is buried in a section that doesn't seem related to indemnity (called "Protection of Existing Structures and Facilities"). *Id.* at 502.

In short, the indemnity clause bears none of the indicia that might typically attract a reader's attention: The clause is on page 86 of a 197-page document, single-spaced along with the rest of the document, in black-and-white, without a heading that calls attention to indemnity. The clause is not conspicuous.

### 2. Actual Notice

In a reply brief, Kellogg argues for the first time that Eby had actual notice of the indemnity provision. Kellogg's Reply Br. at 11-13. We reject this argument because it was waived and unsupported when Kellogg responded to Eby's summary judgment motion.

19

The argument is too late because an appellant must present its grounds for reversal in the opening brief. Fed. R. App. P. 28(a)(8)(A). In the opening brief, Kellogg made no mention of "actual notice." This issue was first raised in Kellogg's reply brief. Thus, Kellogg waived the issue. *See, e.g.*, *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.").

Kellogg's argument is not only waived, but also unsupported. Kellogg raised the argument in district court, but failed to present any evidence that Eby's predecessor had known that it was promising indemnity for claims involving the indemnitee's own fault.

Instead, Kellogg argued that Eby's predecessor must have known about the indemnity terms because it signed a 4-page contract referring to the indemnity clause.[7] But as noted above, the 4-page contract did not contain any terms and referred only to the indemnification terms in the 197 single-spaced pages. The 4-page contract does not support a reasonable

---

[7] In a surreply brief filed in district court, Kellogg added evidence that Eby had admitted knowledge of the indemnity agreement. Appellant's App. at 1289. But, the District of Kansas does not permit the raising of new arguments in a surreply brief. *See First Specialty Ins. Corp. v. NAIS, Inc.*, 459 F. Supp. 2d 1094, 1099 (D. Kan. 2006). Eby had no opportunity to address the new arguments in either of the briefs that it filed in district court.

inference of actual notice regarding the indemnity terms buried in the middle of 197 pages. *See Am. Home Shield Corp. v. Lahorgue*, 201 S.W.3d 181, 186-87 (Tex. App. 2006) (holding that actual notice requires proof beyond the fact that a party read the contract before signing it).

Kellogg's argument of actual notice is waived and unsupported. Thus, actual notice cannot serve as the basis for reversal.

### E.    Effect of the Fair Notice Rule

The fair notice rule involves a tool of contract interpretation. *See Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 814 (Tex. 1994) ("The express negligence requirement is not an affirmative defense but a rule of contract interpretation."). Because the indemnity clause is unenforceable, we read the clause as if it didn't cover the pipeline owner's claims against Kellogg. *See Reyes v. Storage Processors, Inc.*, 86 S.W.3d 344, 351 (Tex. App. 2002) ("[A]n employee who has executed a liability waiver that is defective for failing to meet the fair notice requirements is in the same position as if he had never signed the release, unless he had actual knowledge of the release's provisions."), *aff'd*, 134 S.W.3d 190 (Tex. 2004). As a result, Eby has no contractual obligation to reimburse Kellogg for its attorneys' fees or costs. In these circumstances, the award of summary judgment to Eby was proper.

21

### III.   Travelers and Eby:  Assumption of Contractual Liability

Kellogg sued not only Eby, but also Eby's insurer:  Travelers. Travelers did not name Kellogg as an insured.  But Travelers apparently acknowledges that it agreed to insure parties whose liabilities were assumed by Eby in a "covered contract."  Kellogg contends that

- even if Eby's promise of indemnity was unenforceable, it had been made, and

- because the promise had been made, Travelers (as Eby's insurer) indirectly insured Kellogg for the money spent defending the pipeline owner's claims.

We disagree with Kellogg.[8]

Under Texas law, we must interpret the indemnity clause in a way that does not cover damages caused by Kellogg's fault.  *See* part II(E), above.  As discussed above, this interpretation means that the indemnity clause does not cover the pipeline owner's claims against Kellogg.  And without an underlying indemnity clause covering Kellogg's expenses, Eby did not assume Kellogg's liability.  Therefore, Eby's insurer (Travelers) never agreed to provide insurance to cover Kellogg's claims.  In the absence of insurance coverage, the district court properly granted summary

---

[8]   Because Travelers is not liable on other grounds, we need not decide whether there is a covered contract.

22

judgment to Travelers on the claim involving Eby's assumption of contractual liability.[9]

## IV. Conclusion

Applying the fair notice rule to the indemnification clause, we conclude that Eby's indemnity promise was unenforceable. It was as if the indemnity promise had never been made.

Without an enforceable indemnity promise, Eby and Travelers are entitled to summary judgment: Eby cannot incur liability for an unenforceable promise, and Travelers did not insure Kellogg. As a result, we affirm the summary judgment rulings.

---

[9]    Kellogg relies on *Gilbane Building Co. v. Admiral Insurance Co.*, 664 F.3d 589 (5th Cir. 2011). But there the court was addressing coverage of the indemnitee as an "additional insured." *Gilbane Bldg. Co.*, 664 F.3d at 593-96. "A contract provision that extends direct insured status as an additional insured is deemed to be separate and independent from the indemnity agreement." *Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 682 (5th Cir. 2010). Our issue is different: the effect of an unenforceable indemnity clause. Kellogg has not raised the argument involved in *Gilbane Building Co.*: the indemnitee's coverage as an "additional insured."