**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 19, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KATHLEEN ARBOGAST,

     Plaintiff - Appellee,

v.

STATE OF KANSAS, DEPARTMENT
OF LABOR,

     Defendant - Appellant,

and

LANA GORDON, individually and as
Secretary of Labor for the State of Kansas,

     Defendant.

No. 14-3091

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 5:13-CV-04007-JAR-KMH)**
_____

Glenn Howard Griffeth, Chief Counsel, Kansas Department of Labor, Topeka, Kansas
(M. J. Willoughby, Assistant Attorney General, Topeka, Kansas, with him on the briefs),
for Defendant-Appellant.

Alan V. Johnson (Danielle N. Davey with him on the brief), Sloan, Eisenbarth,
Glassman, McEntire & Jarboe, L.L.C., Topeka, Kansas, for Plaintiff-Appellee.
_____

Before **KELLY**, **HOLMES**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.

_____

Defendant-appellant Kansas Department of Labor (KDOL) brings this interlocutory appeal, arguing the district court should have dismissed plaintiff-appellee Kathleen Arbogast's suit because (1) KDOL lacks the capacity to sue and to be sued under Kansas law and (2) even if KDOL is a proper defendant, it is immune from suit by operation of the Eleventh Amendment to the U.S. Constitution. We hold that we lack appellate jurisdiction to consider KDOL's capacity argument, but we exercise our jurisdiction under the collateral order doctrine and affirm the district court's determination that KDOL is not entitled to Eleventh Amendment immunity from Ms. Arbogast's claims.

## I.     BACKGROUND

Ms. Arbogast was employed in the Workers Compensation Division of KDOL, a governmental subdivision of the State of Kansas. Ms. Arbogast suffers from asthma and, in April 2008, complained that perfumes and other strong fragrances in the workplace were impairing her ability to work. In September 2010, Ms. Arbogast was moved to a workspace in the basement of her office building in an attempt to alleviate the problem. But Ms. Arbogast continued to suffer asthma attacks when coworkers wearing fragrances would come speak with her, prompting Ms. Arbogast to make additional complaints to her supervisor. On August 1, 2011, Karin Brownlee, then-Secretary of Labor, terminated Ms. Arbogast's employment at KDOL.

On January 22, 2013, Ms. Arbogast filed suit, asserting claims of discrimination and retaliation in violation of the Rehabilitation Act of 1973, 29

2

U.S.C. § 701 *et seq.*[1] Ms. Arbogast named as defendants the "State of Kansas, Department of Labor" and Ms. Brownlee in her individual capacity. She sought monetary damages in excess of $100,000.

KDOL moved to dismiss Ms. Arbogast's Rehabilitation Act claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(c). Relevant to this appeal, KDOL argued the district court did not have jurisdiction to adjudicate the claim because (1) KDOL lacks the capacity to sue or to be sued under Kansas law and (2) Kansas has not waived its Eleventh Amendment immunity from suit. Ms. Arbogast filed a motion seeking limited discovery on the jurisdictional issue, which the district court granted.

After the parties completed limited discovery, the district court denied KDOL's motion to dismiss. Specifically, the district court found KDOL had waived its Eleventh Amendment immunity by accepting federal funds for its Unemployment Insurance Division. Although Ms. Arbogast worked in the Workers Compensation Division, the district court concluded that KDOL's acceptance of federal funds for the Unemployment Insurance Division was sufficient to waive Eleventh Amendment immunity for the entirety of KDOL, including the Workers Compensation Division. The district court also rejected KDOL's argument that it did not have the capacity to be sued, finding it was merely a reiteration of KDOL's immunity argument. KDOL now brings this interlocutory appeal.

---

[1] Ms. Arbogast also asserted claims under the Family Medical Leave Act, but those claims are not before us in this appeal.

3

## II. DISCUSSION

KDOL argues (1) the district court erred in not dismissing Ms. Arbogast's Rehabilitation Act claims because KDOL lacks the capacity to sue and to be sued under Kansas law and (2) even if KDOL is a proper defendant, it has not waived its Eleventh Amendment immunity from suit for purposes of Ms. Arbogast's Rehabilitation Act claims. We address each claim in turn.

### A. We Do Not Have Appellate Jurisdiction to Consider KDOL's Claim that It Lacked the Capacity to be Sued

KDOL first argues the district court erred in refusing to dismiss Ms. Arbogast's suit because KDOL lacks the capacity to sue or to be sued under Kansas law and is therefore not a proper defendant. *See* Fed. R. Civ. P. 17(b) (indicating that a party's capacity to sue or be sued in federal court is determined by state law). Specifically, KDOL argues that, as merely a state agency, Kansas law does not endow it with the capacity to sue or to be sued. It further argued in its briefing before this court that we have jurisdiction to hear an immediate appeal of this issue under the collateral order doctrine. But counsel for KDOL conceded at oral argument that the collateral order doctrine may not permit interlocutory review of KDOL's lack of capacity argument. For the reasons discussed below, this concession was appropriate.

Normally, federal appellate courts only have jurisdiction to hear appeals from "final decisions of the district courts." 28 U.S.C. § 1291. But the U.S. Supreme Court has also recognized a "small class" of nonfinal orders, which, though not usually immediately appealable, are nonetheless amenable to interlocutory appeal under the

4

collateral order doctrine.[2] *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Under this "narrow" exception to the final order rule, *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994), the Supreme Court has recognized two ways in which an interlocutory order may be immediately reviewable: (1) the order must independently meet all of the required elements of a collateral order or (2) the order must fall within this court's limited pendent jurisdiction. *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42, 50–51 (1995) (citing *Cohen*, 337 U.S. at 546); *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1147 (10th Cir. 2011). We address each possible basis of appellate jurisdiction in turn.

First, KDOL contends both its Eleventh Amendment immunity and lack of capacity claims fall within the collateral order doctrine. It is well established that orders denying state entities Eleventh Amendment immunity are immediately reviewable under the collateral order doctrine. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993) ("We hold that States and state entities that claim to be 'arms of the State' may take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity."); *accord Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1199–1200 (10th Cir. 2002). But we must determine whether KDOL's lack of capacity claim is

---

[2] Other methods to immediately appeal nonfinal orders include a petition for interlocutory appeal under Federal Rule of Appellate Procedure 5 and certification by the district court pursuant to 28 U.S.C. § 1292(b) or Federal Rule of Civil Procedure 54(b). In this case, KDOL has invoked only the collateral order doctrine as the basis for our jurisdiction.

similarly amenable to immediate review. To invoke our jurisdiction under the collateral order doctrine, an appellant "must establish that the district court's order (1) conclusively determined the disputed question, (2) resolved an important issue completely separate from the merits of the case, and (3) is effectively unreviewable on appeal from a final judgment." *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1178 (10th Cir. 2005) (internal quotation marks omitted). "Unless all three requirements are met, jurisdiction is not available under the collateral order doctrine." *Utah State Dep't of Health ex rel. Utah v. Kennecott Corp.*, 14 F.3d 1489, 1492 (10th Cir. 1994). In this case, KDOL has failed to establish the first requirement because the district court did not conclusively determine KDOL's capacity to sue or to be sued under Kansas law.

When considering whether a district court has conclusively determined the disputed question, this court has emphasized the importance of precisely identifying that question. *See United States v. Deters*, 143 F.3d 577, 580 (10th Cir. 1998). "In order to determine what the disputed question is, we must examine the grounds for the appeal." *Id.* (brackets and internal quotation marks omitted). "Only by identifying the precise issue being appealed can a court decide whether that issue has been conclusively determined . . . ." *Id.* at 580. The relevant issue being appealed in this case is whether KDOL has the capacity to be sued under Kansas law.

The district court's analysis of KDOL's lack of capacity argument consisted of three sentences:

Fed. R. Civ. P. 17(b)(3) provides that parties must have "capacity" to be sued, as determined by the law of the state where the court is located. KDOL essentially reiterates its sovereign immunity defenses by arguing that governmental entities do not have the capacity to be sued in the absence of express authorization. As explained above, KDOL's acceptance of federal funds acts as a waiver of sovereign immunity and renders any arguments against capacity ineffectual.

Although the district court disposed of KDOL's lack of capacity argument, it held only that the argument was "ineffectual" because it reflected a mere repackaging of KDOL's sovereign immunity arguments. But the court's analysis sheds little light on the precise issue KDOL raised below and on appeal: whether KDOL has the statutory capacity to be sued under Kansas law. Thus, KDOL has failed to establish that its capacity claim is an independently appealable collateral order.

Because we do have collateral order doctrine jurisdiction to review KDOL's immunity claim, we next consider whether we may exercise our pendent appellate jurisdiction to also consider its capacity claim. In *Swint*, the Supreme Court expressly limited pendent appellate jurisdiction in the collateral order context. *See Swint*, 514 U.S. at 42. And this court has "interpreted *Swint* to mean that the exercise of our pendent appellate jurisdiction is *only* appropriate when the otherwise nonappealable decision is inextricably intertwined with the appealable decision, or where review of the nonappealable decision is necessary to ensure meaningful review of the appealable one." *Crowe & Dunlevy*, 640 F.3d at 1148 (internal quotation marks omitted). We have further emphasized,

> [A] pendent appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the

7

court on interlocutory appeal—that is, when the appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well.

*Moore v. City of Wynnewood*, 57 F.3d 924, 930 (10th Cir. 1995).

The interlocutory order properly before us concerns whether KDOL is entitled to immunity from Ms. Arbogast's claims under the Eleventh Amendment. The issue of whether KDOL has the capacity to be sued under Kansas law is not "coterminous with, or subsumed in," the immunity issue, *id.*, because whether KDOL has the statutory capacity to be sued under Kansas law is irrelevant to our determination of whether Eleventh Amendment immunity bars Ms. Arbogast's claims. It is similarly unnecessary for us to resolve the capacity issue "to ensure meaningful review" of the immunity issue. *See Crowe & Dunlevy*, 640 F.3d at 1148. Thus, because KDOL's capacity claim is not independently appealable under the collateral order doctrine and because resolution of the capacity claim is not necessary to our resolution of the immunity claim, we lack appellate jurisdiction to consider it. Accordingly, we dismiss the appeal on the issue of whether KDOL has the capacity to be sued under Kansas law.

## B. KDOL Waived Its Eleventh Amendment Immunity by Accepting Federal Funds for Its Unemployment Insurance Division

KDOL's remaining claim is that it is immune from suit under the Eleventh Amendment to the U.S. Constitution. Specifically, KDOL argues it has not waived its Eleventh Amendment immunity[3] for purposes of Ms. Arbogast's Rehabilitation Act claim because its acceptance of federal funds for its Unemployment Insurance Division cannot constitute a waiver of immunity for the entirety of KDOL. We review a district court's determination of Eleventh Amendment immunity de novo. *Robinson v. Kansas*, 295 F.3d 1183, 1188 (10th Cir. 2002), *abrogated on other grounds by Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 n.4 (10th Cir. 2012).

The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has interpreted the Eleventh Amendment to bar suits in federal court against a nonconsenting state brought by the state's own citizen. *Edelman v. Jordan*, 415 U.S.

---

[3] KDOL's briefing on this issue seems to conflate the concepts of a state's "sovereign immunity" from suit in state court with a state's Eleventh Amendment immunity in federal court. But Eleventh Amendment immunity is a subset of a state's inherent sovereign immunity. 13 Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3524 (3d ed. 2008). State sovereign immunity protects states from suit and damages in their own courts; the Eleventh Amendment extends such sovereign immunity to the states for actions initiated against them by their citizens in federal court. *See Purvis v. Williams*, 73 P.3d 740, 751 (Kan. 2003) ("The Rehabilitation Act claim was brought in federal court, where only Eleventh Amendment immunity is at issue, not sovereign or inherent immunity.").

651, 662–63 (1974). But such immunity is not absolute. Congress can abrogate states' immunity when exercising its power under section 5 of the Fourteenth Amendment to the U.S. Constitution. *See* U.S. Const. Amend. XIV, sec. 5 ("The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."); *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). Relevant to this appeal, a state may also waive its Eleventh Amendment immunity. *Seminole Tribe*, 517 U.S. at 65 (referring to the "unremarkable . . . proposition that the States may waive their sovereign immunity"). States can voluntarily waive their immunity by choosing to invoke federal jurisdiction. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002). "Waiver can also occur when the state 'unequivocally' expresses its intent to submit itself to [federal] jurisdiction." *Robinson*, 295 F.3d at 1189 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)). A state can express such unequivocal intent by statute, constitutional provision, or through its "actions, specifically, its participation in a particular federal program." *Id.*

To determine whether KDOL unequivocally expressed its intent to waive Eleventh Amendment immunity through acceptance of federal funds as described in the Rehabilitation Act, we first look to the act's plain language. Congress enacted the Rehabilitation Act of 1973 to combat discrimination targeted toward individuals with physical and mental disabilities. *See* 29 U.S.C. § 794. The act provides:

10

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

*Id.*

In *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 247 (1985), the Supreme Court held that the act fell "far short of manifesting a clear intent to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity." In response to the *Atascadero* decision, Congress enacted the Rehabilitation Act Amendments of 1986, in which it sought to provide a sufficiently clear statement that acceptance of federal funds by the states constituted a waiver of immunity. *See Robinson*, 295 F.3d at 1189. As codified, the amendment provides:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. § 2000d-7(a)(1).

The Supreme Court has declared § 2000d-7 to be precisely "the sort of unequivocal waiver that our precedents demand." *Lane v. Pena*, 518 U.S. 187, 198 (1996). Accordingly, every circuit court to consider the issue, including the Tenth Circuit, has concluded "that by accepting federal financial assistance as specified in 42 U.S.C. § 2000d-7, states and state entities waive sovereign immunity from suit."

11

*Robinson*, 295 F.3d at 1190 (collecting cases); *Brockman v. Wyo. Dep't of Family Servs.*, 342 F.3d 1159, 1167 (10th Cir. 2003) ("[A]ny State reading 42 U.S.C. § 2000d-7(a)(1) would clearly understand that, by accepting funding, it was consenting to resolve disputes regarding alleged violations of the Act's anti-discrimination provisions in federal court." (brackets and ellipses omitted)). Therefore, our precedent squarely holds that a state's "affirmative choice to apply for, and accept, [federal] funds thus serves as an express waiver of immunity." *Brockman*, 342 F.3d at 1168.

It is undisputed that KDOL accepted federal funds for its Unemployment Insurance Division. As such, the only remaining question here is whether such acceptance waived Eleventh Amendment immunity for the Rehabilitation Act claims of Ms. Arbogast, who worked for the Workers Compensation Division. To answer this question, we again start with the language of the Rehabilitation Act, which prohibits discrimination by "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The act further defines "program or activity" as "*all of the operations* of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government[,] . . . *any part of which* is extended Federal financial assistance." *Id.* § 794(b)(1)(A) (emphasis added). "In this sense, the scope of the Eleventh Amendment immunity waiver directly correlates to the state department or agency receiving federal financial assistance." *Koslow v. Pennsylvania*, 302 F.3d 161, 171 (3d Cir. 2002).

12

Counsel for KDOL conceded at oral argument that the plain language of § 794(b)(1)(A) indicates KDOL's acceptance of federal funds for any part of its operations effectuates a waiver of Eleventh Amendment immunity for the entire department. Nevertheless, KDOL advances several overlapping theories why it has not waived Eleventh Amendment immunity for the Workers Compensation Division.[4] First, KDOL argues it did not knowingly and voluntarily waive its Eleventh Amendment immunity through acceptance of funds for its Unemployment Insurance Division. Second, KDOL argues the contract documents governing the grant of federal funds to the Unemployment Insurance Division do not demonstrate knowing and voluntary waiver of immunity. Third, KDOL argues its Workers Compensation Division qualifies as a separate "program or activity" under the Rehabilitation Act, and therefore any waiver of immunity based on funds received by the Unemployment Insurance Division would not encompass claims arising out of the Workers Compensation Division. Finally, KDOL argues that extending waiver of immunity to the Workers Compensation Division—which accepts no federal funds—violates the Spending Clause of the U.S. Constitution. We address each argument in turn.

---

[4] KDOL also asserted that any waiver of Eleventh Amendment immunity would be limited to a waiver of immunity from suit and KDOL would retain its immunity from awards of money damages. Even if this argument were meritorious, KDOL did not raise it until its reply brief. The argument is therefore waived. *See Martin K. Eby Constr. Co. v. OneBeacon Ins. Co.*, 777 F.3d 1132, 1142 (10th Cir. 2015); *accord M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.").

13

**1. KDOL's Affirmative Acceptance of Federal Funds Effectuated a Valid Waiver**

KDOL argues its mere receipt of federal funds is insufficient to demonstrate it has knowingly and voluntarily waived its Eleventh Amendment immunity. This argument is squarely foreclosed by our precedent holding that receipt of funds under the Rehabilitation Act *is* a valid waiver of immunity. *See Robinson*, 295 F.3d at 1190. Accordingly, we do not address it further.

**2. KDOL's Waiver Was Accomplished by Operation of Statute, Not Through Contractual Agreement**

KDOL next argues its acceptance of federal funds for its Unemployment Insurance Division cannot support a finding of waiver because the contract documents governing the federal grant received by the division did not evince a clear intent to waive the state's Eleventh Amendment immunity. KDOL relies on this court's decision in *Nanomantube v. Kickapoo Tribe in Kansas*, 631 F.3d 1150 (10th Cir. 2011). There, a former employee brought a Title VII employment discrimination complaint against the tribe and the tribal casino in which the employee had worked. *Id.* at 1151. The employee argued the tribe had "waived its sovereign immunity though a single sentence contained in the casino's employee handbook," in which the tribe promised to comply with the provisions of Title VII. *Id.* at 1152. The employee argued this sentence constituted consent to suit in federal court for Title VII suits. *Id.* We disagreed and held the tribe's agreement to comply with Title VII, without more, did not constitute an unconditional waiver of sovereign immunity. *Id.* at 1153.

14

KDOL argues that, like in *Nanomantube*, the contracts governing the grants it received from the federal government are insufficient to constitute an explicit waiver of immunity. The first problem with KDOL's argument is that tribal sovereignty, unlike state sovereignty, is not governed by the Eleventh Amendment. *See id.* at 1151–52 (explaining the source of tribal immunity). The second problem with KDOL's argument is that the waiver of its immunity here is not dependent on any contractual agreements. Rather, KDOL's immunity has been waived through Congress's unequivocal statement in § 2000d-7 that receipt of federal funds constitutes consent to waive Eleventh Amendment immunity, followed by KDOL's affirmative choice to accept the conditioned funds. *See Robinson*, 295 F.3d at 1190 (noting that no waiver through contract is necessary if waiver has been accomplished by statute). Accordingly, there was no need for KDOL to waive its immunity by contract because waiver had already been accomplished through the acceptance of federal funds.

**3. The Workers Compensation Division Is Not a Separate "Program or Activity" Under the Rehabilitation Act**

KDOL also argues the Workers Compensation Division should be considered its own "program or activity" under the Rehabilitation Act. And as a result, it argues any waiver of immunity based on the Unemployment Insurance Division's acceptance of federal funds cannot be extended to waive immunity from Rehabilitation Act claims arising out of Ms. Arbogast's employment in the Workers Compensation Division. Generally, courts considering the scope of a state entity's

15

waiver under the Rehabilitation Act acknowledge that the definition of "program or activity" was "not intended to sweep in the whole state or local government" whenever one subdivision discriminates. *Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir. 1991). Rather, courts interpret the phrase "program or activity" to "only cover[] all the activities of the department or the agency receiving federal funds." *Lovell v. Chandler*, 303 F.3d 1039, 1051 (9th Cir. 2002). When courts consider whether a particular subunit of state government is an independent department under the Rehabilitation Act, they look to the state's characterization of the subunit under state law. *Sharer v. Oregon*, 581 F.3d 1176, 1178 (9th Cir. 2009); *Haybarger v. Lawrence Cnty. Adult Probation & Parole*, 551 F.3d 193, 201 (3d Cir. 2008) ("Although the Rehabilitation Act is a federal statute, we look to state law to ascertain the character of a state entity for purposes of assessing Eleventh Amendment immunity."). Courts further consider the degree of financial and administrative independence of the subunit. *Sharer*, 581 F.3d at 1180; *Haybarger*, 551 F.3d at 202.

On appeal, KDOL has not addressed the Workers Compensation Division's administrative structure within KDOL. Rather, it argues the Workers Compensation Division should be considered a "department" unto itself because (1) it "is entirely funded through assessments on employers within the State," (2) there is no commingling of funds between the division and KDOL as a larger entity, and (3) the division pays KDOL for any services it receives from KDOL. Accordingly, KDOL argues the Workers Compensation Division was entirely shielded from federal funds

16

and KDOL did not waive its Eleventh Amendment immunity relating to claims under the Rehabilitation Act arising from that division.

But a division that accepts no federal funds can nonetheless fall within the scope of an Eleventh Amendment waiver so long as that division is part of the same department under state law. The Third Circuit has described the waiver under § 2000d-7 as "structural," meaning "[o]nce the department or agency is identified, . . . the statute encompasses all of its operations, regardless of whether a particular operation is federally funded." *Haybarger*, 551 F.3d at 200. In *Haybarger*, a former employee of Pennsylvania's Lawrence County Adult Probation and Parole Department (LCAPPD) brought suit under the Rehabilitation Act, claiming she was discharged due to health problems. *Id.* at 196. LCAPPD was a subunit of the Fifty-Third Judicial District. *Id.* at 196 n.1. Although LCAPPD received no federal funds, the Domestic Relations Section of the Fifty-Third Judicial District received federal social security funds. *Id.* at 197. After the district court dismissed the claims on the basis of Eleventh Amendment immunity, the employee appealed. The Third Circuit concluded the Domestic Relations Section was a subunit of the Fifty-Third Judicial District and that a subunit's acceptance of federal funds worked a waiver on the entire Fifty-Third Judicial District. *Id.* at 200. The Third Circuit reasoned that "[b]ecause the [Domestic Relations Section] is not independent, the funds it receives are imputed to the Fifty-Third Judicial District as a whole," and immunity was therefore waived. *Id.* at 202. *See also Thomlison v. City of Omaha*, 63 F.3d 786, 789 (8th Cir. 1995) (holding that where the city's Fire Division received no federal funds,

17

but was part of the Public Safety Department and other Public Safety Department divisions received federal funds, the entire Public Safety Department—including the Fire Division—had waived immunity for violations of the Rehabilitation Act). *But see Sharer*, 581 F.3d at 1179–80 (holding that where agency was part of judicial branch as defined by Oregon Constitution, but not part of the Judicial Department under Oregon statute, receipt of federal funds by Judicial Department did not waive Eleventh Amendment immunity for Rehabilitation Act claims against agency).

These cases stand for the proposition that acceptance of federal funds for one division within a larger department may effectuate a waiver of Eleventh Amendment immunity for the entirety of the larger department, including divisions that accept no federal funds. The critical question is the degree to which the division accepting federal funds can be considered independent from the larger department. In this case, the Unemployment Insurance Division and Workers Compensation Division both have strong administrative ties to KDOL, which is "administered under the direction and supervision of the secretary of labor." Kan. Stat. Ann. § 75-5701(a). The Workers Compensation Division is "established within and as a part of the department of labor." *Id.* § 75-5708(a). The Workers Compensation division director is appointed by and serves at the pleasure of the secretary of labor. *Id.* The secretary of labor is empowered to fix the director's salary, appoint administrative law judges, and approve the selection of assistant directors. *Id.* § 75-5708(a)–(c). The secretary of labor is also empowered to "establish policies governing the transaction of all business of the department and the administration of each of the divisions within the

18

department." *Id.* § 75-5723. Thus, as directed by the secretary of labor, KDOL exerts substantial administrative control over the Workers Compensation Division.

Under Kansas law, KDOL actively administers both the Unemployment Insurance Division and the Workers Compensation Division. Thus, the Workers Compensation Division's separate funding does not make it so independent of the Department of Labor that it should be considered its own "program or activity" under the Rehabilitation Act.

Moreover, the contract governing the grant of funds to the Unemployment Insurance Division was entered into by the Kansas Secretary of Labor on behalf of KDOL. Kansas law specifically authorizes the secretary to enter into such contracts. Kan. Stat. Ann. § 75-5733. There is no similar authorization for division directors. Thus, *KDOL* accepted federal funds and passed those funds through to its Unemployment Insurance Division. Under the plain language of the Rehabilitation Act, KDOL's acceptance of federal funds waived Eleventh Amendment immunity for "all of [its] operations," including those of its Workers Compensation Division. *See* 29 U.S.C. § 794(b)(1)(A).

**4. Extending Waiver of Eleventh Amendment Immunity to the Workers Compensation Division Does Not Violate the Spending Clause of the U.S. Constitution**

Finally, KDOL argues that interpreting the Rehabilitation Act and § 2000d-7 to effectuate a waiver of Eleventh Amendment immunity for KDOL's Workers Compensation Division—which received no federal funds—would exceed Congress's authority under the Spending Clause of the U.S. Constitution.

19

Specifically, KDOL contends the connection between its receipt of federal unemployment insurance funds is too attenuated from the Workers Compensation Division, thereby violating the Supreme Court's test for conditions on grants of federal funds announced in *South Dakota v. Dole*, 483 U.S. 203 (1987).

In *Dole*, the Supreme Court discussed the limitations on Congress's power under the Spending Clause. First, any exercise of the spending power must be for the "general welfare." *Id.* at 207 (internal quotation marks omitted). "In considering whether a particular expenditure is intended to serve general public purposes, courts should defer substantially to the judgment of Congress." *Id.* Second, Congress may condition the states' receipt of federal funds, but it must do so "unambiguously, enabling the States to exercise their choice knowingly, cognizant of the consequences of their participation." *Id.* (brackets, ellipses, and internal quotation marks omitted). Third, the conditions must be related "to the federal interest in particular national projects or programs." *Id.* And fourth, other constitutional principles may independently bar the condition of federal funds. *Id.* at 208.

KDOL first argues the creation of an individual right of action under the Rehabilitation Act lacks a sufficient nexus with the general welfare to satisfy the first *Dole* requirement. But KDOL's argument misapprehends the *Dole* test. The first *Dole* factor requires Congress to exercise its spending power "in pursuit of the general welfare." *Id.* at 207 (internal quotation marks omitted). We have recognized that combating discrimination is a valid objective furthering the general welfare. *See, e.g.*, *Hous. Auth. of Fort Collins v. United States*, 980 F.2d 624, 629 (10th Cir. 1992)

20

("The obligations placed on [state housing agency] by Section 420 of the [federal agreement] such as maintenance of the properties as low-income housing, limitation on rents that can be charged, and the prohibition against discrimination in housing, all are obviously valid objectives furthering the general welfare."). But once Congress chooses a proper objective, the means Congress employs to achieve that objective need only be "reasonably calculated" to do so. *Dole*, 483 U.S. at 208. Allowing those who suffer discrimination at the hands of state entities to bring a private cause of action is "reasonably calculated" to achieve Congress's goal of combating discrimination. Thus, the first *Dole* factor is satisfied.

KDOL also argues under the second *Dole* factor that it did not have sufficient notice of the possibility that it would be waiving immunity for the entire Department of Labor by accepting funds for the Unemployment Insurance Division. But the plain language of the Rehabilitation Act and § 2000d-7 indicates that a state waives immunity for "all of the operations" of a department "any part of which" receives federal funds. 29 U.S.C. § 794(b)(1)(A). Therefore, KDOL had sufficient notice of the scope of its waiver.

KDOL further argues that the condition placed upon the receipt of federal funds—waiver of immunity—is unrelated to the federal interest justifying expenditure of those funds, at least to the extent waiver is extended to a division that accepted no federal funds. Although the *Dole* Court declined to "define the outer bounds of the 'germaneness' or 'relatedness' limitation on the imposition of conditions under the spending power," *Dole*, 483 U.S. at 208 n.3, the Third Circuit

21

rejected an argument largely identical to KDOL's. It held there need only be a "discernible relationship imposed by a Rehabilitation Act condition on a department or agency and a federal interest in the program it funds." *Koslow*, 302 F.3d at 175 (internal quotation marks omitted). The *Koslow* court reasoned, "Through the Rehabilitation Act, Congress has expressed a clear interest in eliminating disability-based discrimination in state departments or agencies. That interest, which is undeniably significant and clearly reflected in the legislative history, flows with every dollar spent by a department or agency receiving federal funds." *Id.* at 175–76 (citing *Alexander v. Choate*, 469 U.S. 287, 295–97 (1985)). We agree with the Third Circuit that Congress's intent to eliminate disability-based discrimination is linked to its distribution of federal funds, and that it expressly conditioned the receipt of federal funds by any subunit of a state department or agency on compliance with the Rehabilitation Act. The third *Dole* factor is satisfied.[5]

KDOL has not argued that any other constitutional provisions are implicated in this case. Accordingly, we do not apply the fourth *Dole* factor.

To conclude, KDOL's acceptance of federal funds for its Unemployment Insurance Division effectuated a waiver of Eleventh Amendment immunity for all of the operations of KDOL, including those of its Workers Compensation Division. The

---

[5] KDOL argues the Supreme Court addressed the third *Dole* factor in *National Federation of Independent Business v. Sebelius*, __ U.S. __, 132 S. Ct. 2566 (2012) (*NFIB*), and required a higher degree of relatedness between funding conditions and the goals of Congress. But the *NFIB* Court's discussion of *Dole* was focused on the point at which conditions on the receipt of federal funds switch from permissible inducement to coercion. *Id.* at 2604–05. The Court did not address the "relatedness" element. Thus, KDOL's reliance on *NFIB* is misplaced.

text of the Rehabilitation Act and § 2000d-7 unambiguously extend a state entity's waiver of Eleventh Amendment immunity to "all of the operations" of the department that accepts federal funds. Because the Workers Compensation Division is part of KDOL's operations, KDOL's waiver extends to Ms. Arbogast's Rehabilitation Act claims.

## III.    CONCLUSION

We lack appellate jurisdiction to consider KDOL's argument that it does not have the capacity to be sued and DISMISS the appeal as to that claim. The district court was correct to reject KDOL's claim of Eleventh Amendment immunity as to Ms. Arbogast's Rehabilitation Act claims and we AFFIRM as to that claim.